**DeWITT MOTOR COMPANY, Plaintiff, v. BODNARK et, Defendants.**

Common Pleas Court, Summit County.

No. 218705. Decided February 5, 1960.

Walter B. Wanamaker, Akron, for plaintiff, DeWitt Motor Co.
John M. Glenn, Akron, for defendant, Pacific Finance Loans.
Battin & Downey, Warren, for defendant, John P. Bodnark,

## OPINION

By EMMONS, J.:

This matter is before the Court upon a motion of the Plaintiff for a summary judgment in its favor, on all parts of this cause of action insofar as it affects the DeWitt Motor Company for the reason that the action is at issue and the facts are not in controversy.

Upon consideration of the same, the Court finds that it is uncontroverted that on July 14, 1959, the Plaintiff entered into an agreement with one John Bodnark for the purchase of a new 1959 Dodge Station Wagon from the Plaintiff; that by the terms of the contract a Buick owned by the Defendant Bodnark was to be traded in and a credit given therefor on the purchase price of the said Dodge car; that the balance of the purchase price was to be financed by the Pacific Finance Loans; that on the same day, to-wit:—July 14, 1959, the said John Bodnark entered into another contract with the DeWitt Motor Company, which contract is as follows:

ADVERTISING DEPARTMENT
REPRESENTATIVE'S COMMISSION

FR 6-5602        AGREEMENT        FR 6-5602
DeWITT MOTOR COMPANY
465 North Main Street
Akron 10, Ohio

CROSS-PETITIONER'S
EXHIBIT "B"            Date    7-14-59

Issued to    John P. Bodnark      Address    375 Elm St.

City    Struthers        State    Ohio      Phone    PL 5-

3465

hereinafter referred to as Owner-Representative.

The above named parties hereto agree as follows:

1. DeWitt Motor Company, retains the services of Owner-Representative for a period of twelve (12) consecutive months from the date hereof as an Owner-Representative.

2. Owner-Representative shall submit to DeWitt Motor Company, the names of individuals considered to be qualified prospective purchasers of New Dodge, Plymouth and Rambler Automobiles. Each name so received by DeWitt Motor Company, shall be time stamped when received and shall remain active for a period of thirty (30) days thereafter. In the event that two representatives submit the same name, the Representative first submitting the name as evidenced by the time stamp shall become solely entitled to all the commission payment herein provided in respect to such individual.

3. DeWitt Motor Company, shall pay Representative, as earned com-

mission the sum of One Hundred Dollars ($100.00) for each individual, whose name is first submitted by Representative, and who thereafter becomes a qualified automobile Owner-Representative of DeWitt Motor Company.

4. DeWitt Motor Company, shall pay Representative, as earned commission the sum of Fifty Dollars ($50.00) for each name first subsequently submitted by the individual referred to in paragraph three (3) at the time that he too becomes an automobile Owner-Representative with DeWitt Motor Company.

5. The commission payment herein provided shall be the only compensation due to Representative by DeWitt Motor Company, and it is expressly understood that in accepting this contract Representative is acting as an independent contractor and shall pay all local, city, county, state and federal taxes on any commissions received by him, and shall hold DeWitt Motor Company harmless for any of these taxes.

6. This agreement may be terminated by DeWitt Motor Company by reason of fires, floods, strikes, lockouts, Acts of God, war, rules or regulations of federal, state or local government, repossession, or conversion, or any other circumstances beyond the control of DeWitt Motor Company.

7. This agreement shall go into effect only after the selection of the automobile by Owner-Representative and the signing of this agreement by an authorized agent of DeWitt Motor Company.

8. HOWEVER, REPRESENTATIVE UNDERSTANDS THAT HE IS OBLIGATED TO MAKE EACH PAYMENT DUE ON THE AUTOMOBILE PURCHASED BY HIM AS IT BECOMES DUE.

Enrolled by

Chas. Corcoron
_____
Agent

Approved by DeWitt Motor Company

By J. Hahn
_____

The above and foregoing is accepted and approved by me, and I agree that the above represents the full and complete commission contract between me and DeWitt Motor Company and that there are not oral agreements in addition thereto.

X   John P. Bodnark.
_____
Owner-Representative

The name of Owner-Representative herein was first submitted to DeWitt Motor Company by

Nicholas Sapio
_____

Hereafter in this opinion John Bodnark will be referred to as Bodnark; the DeWitt Motor Company as DeWitt; the Pacific Finance Loans as Pacific.

This contract, the Court finds, was a unilateral contract which was auxiliary and ancillary to the purchase and sale of said Dodge automobile.

Bodnark has asserted that a similar contract to the one herein set forth supra, which the Court will refer to as a "Finder Contract," has been declared by the Attorney General of Ohio to be a "lottery" and

therefore in violation of law and that it taints the whole contractual relation pertaining to the parties by reason of which the Defendant claims the right to disavow, repudiate and disaffirm the contract for the purchase of one car and the trade in of the other and that said Bodnark has so informed the Plaintiff that he would do so.

DeWitt claims in its Petition that the said "Finder Contract" is not a lottery or illegal and further denies that it in any way affects the principal written contract, the terms of which have been completely performed, since Bodnark has transferred title to his Buick to DeWitt and DeWitt has transferred title to the Dodge to Bodnark and Pacific has financed the deal and Bodnark and his wife, Ruth, have given back their note and mortgage on said Dodge. Ruth Bodnark was made a party Defendant for the purpose of the mortgage foreclosure by Pacific.

DeWitt claims that if Bodnark be permitted to proceed in the manner indicated, that others similarly situated would also entertain the same course of procedure and all would be injurious and detrimental to the Plaintiff's business, and prays the Court for a declaration determining the rights of the parties by the construction of the written instrument as is prescribed by law and that, upon final hearing, the Court is requested to declare that no element of a lottery exists in this "Finder" unilateral, supplemental contract or that, if there be such, that it in no way affects the principal contract for the purchase and sale of said Dodge automobile.

There is no claim that the original contract for the purchase of the Dodge car was illegal excepting only as it relates, if at all, to the "Finder Contract."

The first question for the Court's determination is whether the motion for a summary judgment should be sustained.

170 Oh St 209—Ohio Farmers Indemnity Co., Appellant, v. Chames et, Appellees.

Syl: "Under a liberal construction of the Ohio Declaratory Judgments Act (Sec. 2721.01 et seq, R. C.), which provides for a declaration of rights, status and other legal relations, an automobile liability insurer, against whom claims have been asserted on account of death and injury, inflicted by the driver, of an insured automobile, may maintain an action for declaratory judgment as to liability or non-liability under the insurance policy, notwithstanding that factual determinations are necessary to make a declaration on that controlling issue."

143 Oh St 519, Ohio Farmers Insurance Co. et, v. Heisel, Sr. et.

Syl. 1: "The Declaratory Judgments Act is a salutary, remedial measure and should be liberally construed and applied."

Syl. 2: "Under the provisions of §12102-2 GC, any person interested under a contract may have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status or other legal relations thereunder."

Syl. 3: "An insurer may not obtain a declaratory judgment with reference to its insurance policy when no question of construction or validity thereof is raised."

155 Oh St 305, The Travelers Indemnity Co., v. Cochrane, Jr. et.

Syl. 1: "A controversy between insurer and his insured under an

automobile liability insurance policy as to the fact or extent of liability thereunder to persons injured as a result of the operation of the insured automobile or as to the insurer's obligations to defend the insured in an action for damages against him, is an actual and justiciable controversy determinable by declaratory judgment."

See Rowland v. The City of St. Louis, Mo., 327 S. W. Rep. 2nd, 505.

Also see: Simpson v. American Auto Insurance Co., 327 S. W. Rep. 2nd, 519.

The Defendants Bodnarks claim that since John Bodnark and Ruth Bodnark have both filed Answers and Cross-Petitions to DeWitt's Petition and Pacific has filed a suit to foreclose the chattel mortgage that the pleadings present factual matters and are such controversies as should be tried together at the same time as the action for the declaratory judgment and that the motion for summary judgment on the Petition for declaration of the Plaintiff's rights should not be allowed.

The controversy between DeWitt and Bodnarks is such that it depends upon the Court's interpretation of the written "Finder Contract" and such is not subject to testimony to establish the existence of facts. This controversy is such that it is settled by the application of law and not of fact. The "Finder Contract" has been admitted in evidence by consent of counsel.

The prayer in the declaratory judgment action asks only that the "Finder Contract" be interpreted as a matter of law to be or not to be a lottery, and if a lottery whether this contract affects the original contract to purchase.

The action of the Bodnarks, and I might add the foreclosure action, is premised on two probabilities:—

First, that the Court would construe the "Finder Contract" a lottery and therefore illegal.

Second, that being so that such would affect the original contract and thereby taint it with illegality to the extent that the action of Bodnarks and Pacific could be maintained—however if the Court were to find that the probabilities resolved themselves in favor of the legality of the "finder contract," or if found illegal, that it did not so attach to the original contract as to taint it with illegality, then the cause of action of the Bodnarks against both DeWitt and Pacific would fall and I believe the foreclosure action of Pacific would be dismissed.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to a material fact.

Grosby v. Oliver Corp., 9 F. R. D. 110, it was held that "the proceeding on a motion for summary judgment is not a trial, but it is for determination of the question whether there is a genuine issue to be tried."

Thus by sustaining the motion for summary judgment on the Petition for Declaratory Judgment the course would be cleared for further action by the Bodnarks and Pacific or they would have no standing in Court and their actions would fall. It is simply a preliminary matter determining the rights of the parties as to whether a trial should be had to determine the merits of their Cross-Petition or whether that right does not exist.

The Plaintiff who has the burden of showing uncontrovertible facts

as well as no issue of any material fact, has done so in my opinion and the Court finds that nothing factual is necessary for a decision in this declaratory judgment action and the motion for summary judgment will be entertained.

Sec. 2311.041 R. C., provides in part:

* * *

"A party seeking to recover upon a cause of action or counterclaim or to obtain a declaratory judgment, or a party against whom a cause of action or counterclaim is asserted or a declaratory judgment is sought, may, at any time after the action is at issue, move, with or without supporting affidavits, for a summary judgment in his favor upon all or any part thereof." * * *

The statute, the Bodnarks contend, is unconstitutional. **11 O. Jur. 2nd, 49:—**

"Thus there is no difference respecting due process of law in the Constitutions of the United States and of Ohio. The due course of law provision of **Section 16, Article 1, Ohio Constitution,** has been considered equivalent to the due process of law clause in the 14th Amendment to the Federal Constitution."

**11 O. Jur. 2nd, 60:—**

"Summary proceedings which are appropriate to the case do not deny due process."

The provisions of the Federal Rules of Civil Procedure Rule No. 56 is generally the same as §2311.041 R. C., both dealing with Summary Judgments, and the constitutionality of summary judgments has been passed upon favorably by the Federal Courts as well as the courts of other States.

There is no doubt, in my mind, but that the Statute concerning Summary Judgments is constitutional.

Is the "Finder Contract" a plan or an agreement constituting a lottery and therefore illegal?

Attorney General's Opinion No. 649, written July 6, 1959, concerning a similar "Finder Contract" held that such was a lottery and therefore illegal.

**Westerhaus v. Cincinnati, 165 Oh St 327.**

Syl. 5:—"In general, the elements of gambling are payment of a price for a chance to gain a prize."

Syl. 8:—"In order to have a lottery, the determination as to who gets a prize or how much of a prize he gets **must be dependent at least, predominately upon the element of chance.**" (Emphasis by the Court.)

54 C. J. Secundum—Lotteries—Section 2, Pg. 846.

"Human reason, foresight or design are absent from the scheme if the element of chance is present."

"Lottery" is defined as "a chance for a prize at a price" or "a device whereby anything of value is, for a consideration, allotted by lot or chance."

"Chance" is "the absence of explainable or controllable causation." See Black's Law Dictionary, 4th Edition.

State v. Lindsey, 2 Atlantic Rep. 2nd, 201.

Syl 5:—"The word 'lottery' has no technical meaning distinct from its popular signification and is a scheme whereby one or more prizes are distributed by chance among persons who have paid or promised a consideration, for a chance to win them."

Syl. 6:—"The word 'chance' used in rule requiring element of chance to constitute a lottery, means an unforeseen or inexplicable cause or its operation, or an accident and is opposed to something which happens by plan or design or by the exercise of volition or judgment."

In State v. Schwemler—154 Oregon, 533, it was held that a lottery is a scheme by which a result is reached by some action or means taken, and in which result, man's choice or will has no part nor can human reason, foresight, sagacity or design enable him to know or determine such result until the same has been accomplished.

In Horner v. United States, 144 U. S. 449, Judge Spears comments that, "It is easily within bounds to conclude that if the **dominating determining element is one of chance, that element gives character to the whole scheme.**" (Emphasis by the Court.)

In Bodnarks' Amended Cross-Petition there is no claim that he lost money or that the price that he paid for the Dodge car was more than the normal purchase price, although Bodnark in his Brief alludes to those matters.

In all cases that the Court has perused concerning cases involving the question of lottery, the conclusion is quite apparent. The dominating element of a transaction must be one of chance and the meaning of chance being the result in which human reason, or will or design is lacking.

People v. Elliott, 74 Michigan, 264, holds that a lottery "is a scheme by which a result is reached by some action or means taken and in which result, man's choice or will has no part."

In a broad sense all life is determined by chance and everything a gamble, but in the eyes of the law a more definite line of distinction must be had, separating those matters or transactions into contingencies that occur as the result of human reason, will and design, and those that happen not as the result of a plan or design or in the exercise of volition and judgment.

There is no question that the law in Ohio is to the effect that attorney and client may lawfully agree upon compensation to the attorney, contingent or depending upon the amount of money recovered in a lawsuit. The attorney may even agree that he is to receive no compensation, if the case which he is retained to prosecute, is lost. Certainly, "chance" enters into the picture in this case, but it is not the dominating figure. The attorney studies his case as to the facts and the law; he prepares the procedure; he plans the strategy and practices his argument to the Jury—thus the recovery depends largely upon the attorney's skill, his education and his capabilities as well as his preparation, and the later elements are the controlling matters—thereby taking such a contract out of the realms of a gambling one.

In the world of sports, the owner of a team may agree to give a bonus to certain players who maintain a higher average in achievement than normally, and while "chance" enters into the probabilities of obtaining

a bonus, that is not the controlling force but it is the player's desire, his initiative, his practice, and ability that to a greater extent establishes this realization or the lack of these features as going to his failure to realize this attainment.

At times the distinction between a gambling contract and a non-gambling one is extremely fine and it is quite difficult to determine the actual status, in which instance the presumption of legality prevails.

In all lines of legitimate business, the members thereof are working to bring about a certain result for gain or profit and while these contingencies may never develop, nevertheless the dominating factor of judgment, design and volition has entered into their work. This contingency is not, as used in the definition of a lottery, termed "chance."

35 O. Jur. 2nd, 65, Section 3.

"Chance, as one of the elements of a lottery, has reference to the attempt to attain certain ends, not by skill or any known or fixed rules, but by the happening of a subsequent event, incapable of ascertainment or accomplishment by means of human foresight or ingenuity, or upon the subsequent ascertainment of facts unknown at the time of the giving of the consideration."

35 O. Jur. 2nd, 63, Section 2.

"If the determination of who shall be the winner of a prize is by mere luck, the scheme is a lottery."

What is present in the "Finder Contract" in this instance?

1. Bodnark is retained by DeWitt for a period of twelve (12) months as an Owner-Representative.

2. Bodnark paid nothing for this privilege.

3. By this contract Bodnark does not have to do a thing but if he does submit the names of individuals first as prospective purchasers of new Dodges, Plymouths or Rambler automobiles, and if the sale is made to any of the prospective customers within thirty (30) days, he receives the sum of $100.00, and if this purchaser submits a name to DeWitt's and a sale is made to that person, Bodnark receives the sum of $50.00

Here is a man (Bodnark) who is given the opportunity of earning a commission or a bonus, not by lot or chance, but by endeavor and ability to advertise a product—if he doesn't apply himself, he earns nothing but at the same time loses nothing by way of a consideration. However, on the other hand by a telephone conversation, visitations and letter writing he advertises his product as does a company when it uses the mediums of newspaper, radio, television and the like. In all instances it is a practice using foresight, planning and judgment and the results thereof are not predominantly established by chance.

Does this contract have a dominating element of chance therein?

If Bodnark does nothing, he gets nothing. If he exercises his powers of reason and planning, he may realize a fulfillment of the contingency of receiving money as a commission or bonus from DeWitt. This contract, in my opinion, is one that rewards diligence, initiative and industry. It is a contract by which commission can only be earned, not through "chance" as is contained in the definition of "lottery," but by reason of the volition of Bodnark and the application by him of judgment, plan and will.

I cannot reconcile the decision of the Attorney General with the law as I found it to be and must therefore of necessity disagree with that decision and find that the "Finder Contract" is not a lottery since the dominating element is not one of chance but one in which man's choice and judgment has the deciding part.

There is a claim that the "Finder Contract" is illegal because it is in violation of the Salesman's Licensing Act of the State of Ohio.

**Sec. 4517.01 R. C., Section I:**

"Salesman" includes any person who for a commission, compensation or other valuable consideration is employed by a dealer to sell, display and offer for sale or deal in motor vehicles * * *."

**Sec. 4517.03 R. C.**

"No salesman shall engage in the business of selling at retail, motor vehicles in this State or advertise or assume to engage in such business without first obtaining a license therefor * * *."

**Sec. 4517.99 R. C.**

"Whoever violates §§4517.01-4517.13 inclusive, **R. C.,** * * * shall be fined not less than $25.00 nor more than $500.00."

This Court has not been asked to pass upon the question as to whether such a "finder" should obtain a salesman's license or not, but only to pass upon whether this contract was in violation of the Salesman's Licensing Act.

The illegality of an agreement must be in the consideration and promise founded upon it, or in the performance of the agreement.

12 Am. Jur. 646—Contracts, Paragraph 154.

"However for a contract to be deemed invalid, the invalidity must inhere in the contract itself."

There is no stipulation in this agreement whereby Bodnark agrees to do something illegal—if he is a salesman under the definition appearing in §4517.01 R. C., **Section I,** and receives commission for doing something without a license as is set forth in §4517.03 R. C., then he would be subjected to the penalty set forth in §4517.99 R. C.; otherwise if he is no such salesman, then he would need no license.

Under this contract whether he needs a salesman's license or not does not go to the life or merit of the contract. Bodnark does not agree to sell without a license if one is necessary. If he violates the law he can be fined, but such violation would be his own responsibility and is not so associated with the agreement as to vitiate it.

I, therefore, am of the opinion that the "Finder Contract" is not in violation of the Salesman's Licensing Act of the State of Ohio.

For the purpose of defining the further rights of the parties, the Court concludes that even though the "Finder Contract" had been found to be a lottery and therefore illegal, nevertheless the original contract was a separate and distinct agreement in which there was no illegality and that the "Finder Contract" being only referable to the original, would not in any sense of the word make the original contract contrary to law and void.

Journal Entry to be prepared to conform to the Court's finding, saving exceptions to all parties concerned.