FIRST DISCOUNT CORP., APPELLEE, *v.* CUA, APPELLANT.[*]

(No. 2677—Decided July 19, 1962.)

*Messrs. Shaman, Winer, Shulman & Ziegler,* for appellee.
*Mr. William J. Ahern,* for appellant.

CRAWFORD, P. J.   Judgment for $3,493 was entered in favor of plaintiff, appellee, against defendant, appellant, upon a cognovit promissory note which Jenkins Auto Sales, Inc., as payee, had endorsed to the plaintiff.

Upon motion and answer of the defendant, the judgment was suspended.

Defendant, by answer, alleges that he signed a purported agreement with Jenkins Auto Sales, Inc., as part consideration for which he delivered to Jenkins a Buick automobile and executed and delivered to them his promissory note, and executed a chattel mortgage upon a Dodge Coronet automobile to secure the payment of the note.

He further alleges that the purported agreement "did in fact constitute a game, a lottery and a scheme of chance, * * *

[*]Motion to certify the record overruled (37868), March 6, 1963.

a bet, stake and wager,'' and that the Buick and the note and mortgage were delivered in consideration of the right to participate in the same.

Upon hearing, the court found that the agreement was valid, binding and enforceable, and re-entered judgment for the plaintiff for the amount above stated, together with interest.

It is agreed between counsel that if the agreement is valid, judgment should be entered for the plaintiff; if invalid, all other issues shall be tried. The nature and provisions of the agreement are therefore vital and determinative.

Its terms provide that upon completion of the sale of an automobile to the defendant, Jenkins' Advertising Department retains his services as an ''Independent Salesman'' or representative for a period of twelve months; that defendant shall submit to Jenkins the names of individuals considered by him to be qualified prospective purchasers of new Dodge automobiles; that Jenkins shall pay to defendant as earned commission the sum of $100 for each individual whose name is so submitted and who thereafter becomes ''a qualified Owner-Representative'' with Jenkins; that ''Jenkins Auto Sales, Inc., shall pay Representative, as earned commission the sum of Fifty Dollars ($50.00) for each name first subsequently submitted by the individual referred to * * * at the time that he too becomes an Automobile Owner-Representative with Jenkins Auto Sales, Inc.''; that Jenkins may, if it sees fit, apply certain portions of moneys due defendant upon the purchase price of his automobile; that Jenkins will in no way control defendant, who is not required to work regular hours but may sell at any and all times he may see fit; that defendant shall procure an Ohio Motor Vehicle Salesman's License; and that defendant ''alone is obligated to make each payment due on the automobile as it comes due.''

The essential elements of a lottery or game of chance are recognized to be: (1) consideration, (2) chance, and (3) a prize or award. 35 Ohio Jurisprudence (2d), 63, ff., Lotteries, Section 3; *Westerhaus Co., Inc.,* v. *City of Cincinnati,* 165 Ohio St., 327.

The issue in the present case centers upon the element of chance. ''All that is required is that the element of chance is the controlling or predominant feature, and the Supreme Court has announced the rule that in order to have a lottery, the determination as to who gets a prize or how much of a prize he

gets must be dependent at least 'predominately' upon the element of chance." 35 Ohio Jurisprudence (2d), 65, Section 3. And see *Westerhaus Co., Inc.,* v. *City of Cincinnati, supra* (165 Ohio St., 327).

The only Ohio case cited by counsel or discovered by the court which bears directly upon such an agreement as that before us is *DeWitt Motor Co.* v. *Bodnark,* 84 Ohio Law Abs., 48, decided by the Court of Common Pleas of Summit County in 1960. That case involved an agreement almost identical in nature with the one before us. That court held the contract valid. The logic of the opinion is sound and the language clear and applicable to the present case.

An element of chance permeates most of the affairs of men. But the vital question here is whether chance, or volition and effort, are predominant. This contract is so framed that if the representative is to hope for any substantial returns, he must exercise thought, judgment and diligence in order to produce live prospects. It offers every inducement to persuade or to assist in persuading the prospect. The representative's role in the agreement, if it is to produce fruit, must be active and not merely passive.

The same is true, even if slightly less directly, in the second step, if he is to earn and receive the $50 commission. The representative must find not merely other purchasers, but other active representatives. He must in truth be a salesman who will communicate not only his own satisfaction with the product, but also his enthusiasm for selling it. The analogy between the commissions provided in this agreement and the perfectly lawful overwriting commissions of a general agent, jobber, etc., on the sales of his subordinates, is a valid one, even though the representative here must depend upon persuasion alone without actual authority.

The agreement is, as it purports to be, one for *earned* commissions. It is valid, binding and enforceable.

The judgment of the Court of Common Pleas will be, and hereby is, affirmed.

*Judgment affirmed.*

KERNS and SHERER, JJ., concur.