204 So.2d 919 (1967)
M. LIPPINCOTT MORTGAGE INVESTMENT CO. of Florida, Inc., Appellant,
v.
Clark CHILDRESS et ux., Appellees.
No. J-72.
District Court of Appeal of Florida. First District.
November 30, 1967.
Rehearing Denied January 10, 1968.
Louis F. Ray, Jr., of Holsberry, Emmanuel, Sheppard & Mitchell, Pensacola, for appellant.
Paul Shimek, Jr., of Hahn, Reeves & Shimek, Pensacola, for appellees.
WIGGINTON, Chief Judge.
Appellant sued appellees on a promissory note assigned to it by the original payee, Universal Marketing Research. One of the defenses asserted by appellees alleged that *920 the promissory note sued upon was given in consideration for participation in an illegal lottery conducted by the original payee, and the obligation evidenced thereby is therefore a nullity and of no legal effect. From the summary final judgment rendered in favor of appellees this appeal has been taken.
From the pleadings, depositions, affidavits, and other evidence appearing in the file, the following undisputed facts appear. Universal Marketing Research, hereinafter referred to as Universal, was engaged in the promotion and sale of central vacuum cleaning systems for use in private homes. In January of 1966 one Prichett, a friend of appellees, approached them and asked if they were interested in making some money. After receiving a positive response from appellees, Prichett stated that he would send somebody out to talk to them about the proposition. Several nights later they were visited in their home by two representatives of Universal who explained the program sponsored by their company designed to sell their product and to earn money for the purchasers. Under the plan appellees would agree to purchase for installation in their home a central vacuum cleaning unit for a total cost of approximately $750.00 cash, or $975.00 if bought on a time payment plan. To evidence this indebtedness appellees would give their promissory note in return for which they would be employed as representatives of Universal under a commission agreement, the earnings from which would pay for the vacuum cleaning unit and in addition yield appellees an indeterminate amount of money. Under the commission agreement appellees would furnish Universal the names of sixteen of their home-owning friends considered to be prime prospects for purchasing the vacuum cleaning unit. For each unit sold by Universal to the prospects furnished by appellees, the latter would be paid the sum of $50.00. It was represented that sales to such prospective purchasers would yield commissions sufficient in amount to pay in full the promissory note representing the purchase price of the unit sold to appellees. In addition, each prospect submitted by appellees would be offered the same proposal offered appellees, and each would be requested to furnish Universal the names of sixteen of their friends who might be good prospects for purchasing a vacuum cleaning unit. For each person referred by appellees' prospects to whom a unit was sold, appellees would be paid an additional sum of $50.00. It was from commissions to be earned by the sale of units to the persons referred by appellees' prospects that the big money would be made. The prospective purchasers on this second level of the plan would theoretically number one hundred fifty-six and represent a potential yield of $7,800.00 in commissions to appellees. Appellees would agree to contact their friends whose names they would submit to Universal and interest them in the idea of participating in a plan to make money, and not to discuss the plan with them in detail until after Universal's representatives had had an opportunity of making a demonstration to them of the plan in its entirety.
As an outgrowth of the foregoing meeting between appellees and the representatives of Universal, appellees agreed to purchase a vacuum cleaning unit and signed a promissory note in the amount of $972.00 payable to Universal in thirty-six monthly installments. This note represented the purchase price of the unit which was later installed in appellees' home, and the note was subsequently assigned to appellant. At the time of executing the foregoing promissory note, appellees also signed a commission agreement containing in substance the terms and provisions hereinabove related. In the discharge of their obligation appellees furnished to Universal the names of sixteen of their friends whom they considered would be interested in purchasing the vacuum cleaning unit, and subsequently received from Universal commissions in the total sum of $200.00. Upon failure or refusal of appellees to make any of the monthly payments called for in their promissory *921 note, this suit was instituted. It was stipulated that appellant had full knowledge of the program conducted by Universal for the promotion and sale of the vacuum cleaning units, and therefore stands in the same shoes as Universal regarding the defense to the note interposed by appellees.
In the summary judgment appealed herein the trial court found and determined as a matter of law that the transaction which formed the basis of the promissory note sued upon constituted a lottery, thereby rendering the note void and unenforceable. It is with this conclusion of law that appellant takes issue on this appeal.
There is no dispute between the parties but that lotteries are prohibited in Florida.[1] In addition to the constitutional prohibition, the setting up, promoting, or conducting of a lottery is made a crime by statute.[2] Neither the constitution nor the statute which prohibits lotteries defines the term. The Second District Court of Appeal in Blackburn v. Ippolito[3] opined that legislatures were reluctant to formulate a definition of lottery because to do so would enable ingenious and unscrupluous persons to attempt to devise some plan which may not be within the scope of the mischief which the law seeks to remedy.
Appellant contends that the promotional plan conducted by Universal was not a lottery but was a legitimate means of carrying on its business through the use of information furnished to it by its customers. Since it involves only customers of Universal, and people to whom they are referred by such customers, appellant contends the plan does not ensnare or infest the whole community, regardless of age, class or station, which condition must be found to exist before the plan can be held to be a lottery under the ruling of the Supreme Court of this state in Lee v. City of Miami.[4]
Appellant further contends, and appellees agree, that the essential elements of a lottery are (1) a prize, (2) awarded by chance, (3) for a consideration.[5] Appellant contends that none of the elements constituting a lottery appear in the business relationship which existed between Universal and appellees. It is appellant's position that Universal's sale of the vacuum cleaning unit to appellees was a transaction wholly independent of the commission agreement, and no obligation was imposed by that agreement upon appellees to do anything if they so elected. Appellant argues that only if appellees chose to furnish names of prospective purchasers to whom units were subsequently sold would appellees receive a commission. Appellant says there is no prize connected with their promotional plan, the commissions being sums of money which appellees could earn by the use of good judgment and skill in the selection of the persons willing and able to purchase the units. Appellant reasons that the payment of the commission to appellees was not to be awarded by chance, but only in the event a sale was consummated to a prospective purchaser submitted by them. Appellant denies that any consideration passed from appellees to Universal for the opportunity of winning a prize by chance. In support of its position appellant cites decisions from courts of Ohio and Oklahoma which tend to sustain the proposition that referral selling plans somewhat similar to the one involved in this case do not constitute a lottery.[6]
*922 Conversely, appellees argue that all of the elements of a lottery are present in the transaction between them and Universal, and the trial court was correct in so holding. They point to the evidence which appears to establish without dispute that the first approach made to them by their friend, Prichett, was for the purpose of interesting them in a plan for making money, not for buying a vacuum cleaning unit. They contend that they agreed to purchase the cleaning unit only because they were told it was necessary to do so in order for them to become representatives of Universal and participate in the plan which would yield them commissions more than sufficient to pay the cost of the unit and in addition pay them an indeterminate amount of money. It was a scheme by which they hoped and expected to get something for nothing, and for a minimum amount of effort or time on their part would receive substantial cash commissions and a vacuum cleaning unit in the bargain. They contend that the element of prize was represented by the commissions they expected would be paid to them. The element of chance depended upon the number of prospects furnished by them who bought the unit, and others referred by such prospects who likewise purchased a unit from Universal. The consideration they claimed to have paid as a third element of the lottery was the purchase of the initial cleaning unit for installation in their home. In suppport of their position appellees cite decisions rendered by courts in the States of Washington,[7] Kentucky,[8] and New York[9] which, on analogous facts held referral selling plans similar to the one involved herein to be a lottery, and obligations incurred in connection with them to be void.
We do not deem it necessary to decide whether the referral selling plan involved in the case sub judice constitutes a lottery within the original concept of that term as dealt with and defined in the constitution and decisional law of this state. We reach this conclusion because of the adoption by the legislature of F.S. § 849.091, F.S.A., as part of the statutory law of Florida, and which is as follows:

"Chain letters, pyramid clubs, etc., declared a lottery; prohibited; penalties  The organization of any chain letter club, pyramid club, or other group organized or brought together under any plan or device whereby fees or dues or anything of material value to be paid or given by members thereof are to be paid or given to any other member thereof, which plan or device includes any provision for the increase in such membership through a chain process of new members securing other new members and thereby advancing themselves in the group to a position where such members in turn receive fees, dues or things of material value from other members, is hereby declared to be a lottery, and whoever shall participate in any such lottery by becoming a member of, or affiliating with, any such group or organization or who shall solicit any person for membership or affiliation in any such group or organization shall be guilty of a felony, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars, nor more than five thousand dollars, or by imprisonment in the county jail for a period of not more than two years or in the state penitentiary not less than one year nor more than ten years."
*923 From a careful consideration of the foregoing statute, it is our conclusion that the plan or scheme devised by Universal and used in the promotion and sale of its vacuum cleaning units falls within the purview and intent of the statute, and constitutes a lottery. The motivating factor which induced appellees to enter into the business arrangement with Universal was not a desire to purchase a vacuum cleaning unit, but to be paid a lot of money in return for a minimum expenditure of time or effort. The purchase of the cleaning unit was incidental to the overriding motive on the part of appellees to earn money by way of commissions on sales to be made by Universal. Although the commission agreement made it clear that the cost of the unit purchased by appellees was to be paid regardless of the accrual of commissions, appellees were assured that the promissory note they signed should be of no concern because the commissions they could expect to be paid them would more than pay the note in full. The plan encompassed the organization by Universal of a group of prospective purchasers suggested by appellees who were brought together under a plan whereby commissions would be paid to appellees, as well as to the prospective purchasers named by them, the membership of which group would increase through a chain process of new members securing other new members and thereby advancing themselves in the group to a position where they in turn would receive commissions. Concluding as we do that the undisputed evidence establishes as a matter of law that the transaction between appellees and Universal out of which issued the promissory note sued upon constituted a lottery within the meaning and intent of the statute quoted above, it follows that the trial court was correct in rendering summary final judgment in favor of appellees. The judgment appealed is accordingly affirmed.
CARROLL, DONALD K., and JOHNSON, JJ., concur.
NOTES
[1] "Lotteries are hereby prohibited in this State." Art. III, § 3, Florida Constitution, F.S.A.
[2] F.S. § 849.09, F.S.A.
[3] Blackburn v. Ippolito, (Fla.App. 1963) 156 So.2d 550, 553.
[4] Lee v. City of Miami, 121 Fla. 93, 163 So. 486, 101 A.L.R. 1115.
[5] Blackburn v. Ippolito, supra note 3.
[6] De Witt Motor Company v. Bodnark, (Ohio Com.Pl. 1960) 169 N.E.2d 660; First Discount Corp. v. Cua, (1962) 117 Ohio App. 105, 190 N.E.2d 695; Yoder v. So-Soft of Ohio, Inc., (Ohio Com.Pl. 1963) 202 N.E.2d 329.
[7] Sherwood & Roberts-Yakima, Inc. v. Leach, (1966) 67 Wash.2d 630, 409 P.2d 160, 14 A.L.R.3d 1411.
[8] Commonwealth v. Allen, (Ky. 1966) 404 S.W.2d 464.
[9] State by Lefkowitz v. ITM, Inc. (1966) 52 Misc.2d 39, 275 N.Y.S.2d 303.