261 N.J. Super. 182 (1992)
618 A.2d 373
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FREDERICA BEY, AKA "STAR," DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1992.
Supplemental Brief filed November 16, 1992.
Decided December 18, 1992.
Before Judges ANTELL,[1] DREIER and SKILLMAN.
Nia H. Gill argued the cause for appellant (Gill & Cohen, attorneys; Nia H. Gill on the letter brief).
*183 Gary A. Thomas, Assistant Prosecutor argued the cause for respondent (James F. Mulvihill, Acting Prosecutor Essex County, attorney; Gary A. Thomas of counsel and on the letter brief).
Supplemental Brief filed by State November 16, 1992.
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a conviction of promoting gambling, N.J.S.A. 2C:37-2, a third-degree crime. She was sentenced to a one-year probationary term. Defendant was acquitted of third-degree theft by deception, N.J.S.A. 2C:20-4.
The "gambling" involved in this case was a four-level (three-step) pyramid scheme[2], called the Investment Network. Each participant adopted a pseudonym; defendant's was "Star." Defendant contends that she was drawn into the "network" along with other friends, and she readily admitted that she used her home and appeared at homes of others in order to get more people to join the pyramid so that she and others could be paid. For her $1,500 "investment," she received the promised $12,000 reward, and also was found to have her name on other pyramids. Thus, the State reasoned, she was not merely a player in the scheme, but an organizer. The participants met under the auspices of sponsoring groups such as churches, and were given written assurances that the "network" was not a pyramid *184 scheme and was legal. The initial organizers were not identified.
The theft by deception indictment focused on the deceptive nature of the plan, but as noted earlier defendant was acquitted of third-degree theft by deception. We therefore will analyze only the gambling conviction.
Defendant raises two points on this appeal:
POINT I
IT WAS ERROR TO DENY DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL.
POINT II
THE VERDICT REGARDING COUNT II WAS AGAINST THE WEIGHT OF THE EVIDENCE.
While defendant contends there was no proof of mens rea and therefore she should not have been convicted, the presence of her name on more than one pyramid (once she had reached the top of one pyramid) indicates that she was involved more than as an investor of $1,500. She also argues that the scheme was legal and that all of the participants understood the plan as legal. Her argument is clearly incorrect. Pyramid sales schemes are prohibited by the Consumer Fraud Act, N.J.S.A. 56:8-2. Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 233-235, 293 A.2d 682 (Ch.Div. 1972). The perpetrators of such a scheme are potentially subject to the criminal theft by deception penalties. N.J.S.A. 2C:20-4.
What gives us pause, however, is that defendant was acquitted of theft by deception, but convicted of a specific gambling offense. N.J.S.A. 2C:37-2, entitled "promoting gambling," under which defendant was indicted and convicted, defines the promotion of gambling in N.J.S.A. 2C:37-2a(1) and (2). N.J.S.A. 2C:37-2b grades certain gambling activities, namely lottery, policy or bookmaking schemes, as third-degree or fourth-degree crimes. In other matters, promotion of gambling is a disorderly persons offense. This scheme, while obviously fraudulent, might by some stretch of the imagination constitute *185 gambling under the general definition in N.J.S.A. 2C:37-1b. The definition reads:
"Gambling" means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome.
We do not reach the general question of whether promoting a pyramid scheme is promoting gambling. The indictment here did not charge defendant merely with promoting gambling. It stated that defendant "materially aid[ed] an illegal lottery scheme," (emphasis added), and then specified the alleged illegal conduct. It charged specifically how defendant implemented the lottery, namely by engaging
in conduct directed toward the creation or establishment of the particular scheme and activity involved, toward the acquisition or maintenance of premises and equipment, therefore, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of financial or recording phases, and toward other phases of its operation by both aiding the receipt of money from a person other than a player and the receipt of more than $100 in one day of play in such illegal lottery. ...
[Emphasis added].
We have raised this issue on our own and invited a supplemental brief from the State, which has been filed and considered.
It appears, therefore, that defendant was charged solely under N.J.S.A. 2C:37-2b(2), which speaks of a "lottery or policy scheme or enterprise." N.J.S.A. 2C:37-1h defines a "lottery" as
an unlawful gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other media, one or more of which chances are to be designated the winning ones; and (b) the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and (c) the holders of the winning chances are to receive something of value.
"Policy" or the "numbers game" are separately defined in N.J.S.A. 2C:37-1i as
a form of lottery in which the winning chances or plays are not determined upon the basis of a drawing or other act on the part of persons conducting or connected with the scheme, but upon the basis of the outcome or outcomes of a *186 future contingent event or events otherwise unrelated to the particular scheme.[3]
The question of whether a pyramid scheme constitutes an illegal lottery has been considered in other jurisdictions. These courts defined a lottery as a scheme having three essential elements: consideration, chance and prize. This definition was either derived through case law or by statute. We note that this broad definition is the equivalent of our definition of gambling in N.J.S.A. 2C:37-1b, quoted earlier. In the criminal context, several courts have held that pyramid schemes are illegal lotteries. See, e.g., State v. Dahlk, 111 Wis.2d 287, 330 N.W.2d 611 (1983) (finding that a six-level pyramid club constituted an illegal lottery where the extent to which participants win the prize depended on when the person entered the chain, the number of persons he induced to enter, the number of persons the new recruits induced to enter, and whether the market was saturated); Lashbrook v. State, 550 N.E.2d 772 (Ind. Ct. App. 1990) (a four-level pyramid, similar to the one before this court); Roberts v. Communications Investment Club of Woonsocket, 431 A.2d 1206 (R.I. 1981) (a six-step "investment club"). Cf. Commonwealth v. Allen, 404 S.W.2d 464 (Ky. 1966) (a name-referral variant of a pyramid scheme).
In the civil context, other jurisdictions have similarly found pyramid clubs to constitute illegal lotteries, relying on a finding of the same three elements. See State v. Bull Investment Group, Inc., 32 Conn.Sup. 279, 351 A.2d 879 (1974); People ex rel. Kelley v. Koscot Interplanetary, Inc., 37 Mich. App. 447, 195 N.W.2d 43 (1972); Solon v. Meuer, 141 Misc.2d 993, 539 N.Y.S.2d 241 (N.Y. Civ. Ct. 1987); State by Lefkowitz v. ITM, Inc., 52 Misc.2d 39, 275 N.Y.S.2d 303 (N.Y. Sup. Ct. 1966); Wesware, Inc. v. State, 488 S.W.2d 844 (Tex.Civ.App. 1972); Sherwood *187 & Roberts  Yakima, Inc. v. Leach, 67 Wash.2d 630, 409 P.2d 160 (1965).
Two courts, however, came to the opposite conclusion. In Yoder v. So-Soft of Ohio, Inc., 30 O.O.2d 566, 202 N.E.2d 329 (Ohio Com.Pl. 1963), the court held that a pyramid game does not constitute an illegal lottery where the state's gambling statute defined gambling as payment of a price for a chance to gain a prize. The court found that the elements of gambling were not present in the pyramid game. The court said, "[t]he act of purchasing a share of General Motors stock has more of the elements of a gambling transaction than does the one before us." Id. 202 N.E.2d at 331. Also, in Braddock v. Family Finance Corp., 95 Idaho 256, 506 P.2d 824 (1973), the court held that a chain sales-referral scheme was not a "lottery," although it could constitute a scheme for fraudulent misrepresentations. Id. 506 P.2d at 826-827.
These cases are all distinguishable from the case at hand since they deal with common law or statutory lottery definitions different from that found in N.J.S.A. 2C:37-1h. New Jersey's definition specifies elements beyond simply consideration, prize and chance. It specifies that the "chance" must be "represented by and differentiated by numbers or by combinations of numbers or by some other media." N.J.S.A. 2C:37-1h. In addition, the definition specifies that the winning chances are to be "determined by a drawing or by some other method based upon the element of chance." Ibid. Based on this language, we find that the method of play required in the lottery definition is not present in a pyramid scheme.
Furthermore, we reject the notion that the phrases "by some other media" and "by some other method" found in the statute indicate otherwise. These phrases must be analyzed in context. The statute says that the required "chances" are "represented... by numbers or by combinations of numbers or by some other media." From this it seems clear that the legislature was describing the normal usage of the word lottery, where people *188 purchase numbers, or something analogous, and one of those numbers is drawn at random is determined or "by some method based upon the element of chance" to be the winner of the prize. The public is besieged by sufficient variants of State-sponsored lotteries to be aware of the types of games that it expects will be called a "lottery." The "punch board," "scratch-off," or "pick-from-a-hat" styles of lottery are well-known variants to the usual definition of a lottery, i.e., a drawing of "lots" (objects "used as ... counter[s] in determining a question of chance." Webster's New Collegiate Dictionary 681 (1973)).
Furthermore, if the Legislature intended to define a pyramid scheme as an illegal lottery, it was free to do so, as did the Florida legislature. See Section 849.091, Florida Statutes 1971, F.S.A.; see also State ex rel. Shevin v. Turner, 285 So.2d 623 (Fla. Dist. Ct. App. 1973); Frye v. Taylor, 263 So.2d 835 (Fla.App. 1972).
We even note that the prosecutor could only focus on the venture being risky when he urged a gambling conviction. In summation, he said:
Then you come to the gambling charge. You might say to yourself, why is this gambling? Doesn't sound like gambling to me. Well, the Judge is going to give you the law on gambling and what you have to do, what you have to focus on, is that there is a risk involved here and I just spoke of the risk of about how you have to get some other people to come after you, but not only you, but you have to rely on your  those people you get and those people, they have to get other people, and so there is this work built into the system, this element of risk.
A criminal statute must be strictly construed. State v. Meinken, 10 N.J. 348, 352-353, 91 A.2d 721 (1952). We do not perceive that a reasonable person reading our statutory lottery definition would understand that a pyramid scheme, as fraudulent as it may be, was prohibited as a "lottery."[4] Indeed, were *189 we to interpret the lottery definition in N.J.S.A. 2C:37-1h so broadly as to include pyramid schemes, then N.J.S.A. 2C:37-1h likewise could be extended to include receipt of bets on horse racing and organized poker games, even where these activities are addressed separately in the statute.
When the indictment here is read against the statutory definition of a lottery and the proofs in this case, it appears that defendant was not engaged in gambling by means of a lottery (or a policy or numbers game). Because the facts proven at trial could not satisfy the statutory definition of a lottery, defendant's conviction for materially aiding such a "lottery" cannot stand.
Defendant's conviction is reversed. The matter is remanded to the Law Division for the entry of a judgment of acquittal.
NOTES
[1] Judge Antell did not participate in oral argument, but has with the consent of counsel been added to the panel deciding this matter.
[2] A pyramid scheme, like a chain letter, is dependent upon each new level of participants securing two or more persons to join. The new participant makes payment to the person on top of the list or pyramid, who then is removed, and replaced by those at the next level. The fraud in the scheme is that when a participants pay, they must assume that they and those that follow will be able to find new participants until four levels are filled. For all of the first group of new participants to be paid, sixty-four people need to join. After only twenty levels of new participants, 8,388,608 additional "investors" would be needed, and there cumulatively would have been 16,777,200 persons who would have been brought into the scheme, a practical impossibility.

The initial organizers of the pyramid have no one on top to pay, and place their names so that they receive immediate rewards, often rotating their positions on several versions of the initial pyramid.
[3] Had the definition of a "lottery" been as broad as that contended by the State, the separate definition of this form of lottery, based upon a future contingent event, would have been superfluous.
[4] We further note that the court failed to charge the jury concerning the definition of "lottery." The judge merely gave the standard gambling charge, and then told the jury:

[T]hen you must determine further whether the State has proven beyond a reasonable doubt that the Defendant, one, that the Defendant received in connection with a lottery or policy scheme or enterprise, money or written records from a person other than a player whose chances or plays are represented by such money or records or, two, that the Defendant received in connection with a lottery or policy scheme or enterprise, more than $100. in any one day of money played in such a scheme or enterprise.
If you find that either of these two elements existed, the Defendant is guilty of the crime of third degree.
[Emphasis added].
At the very least, defendant would have been entitled to a new trial on the basis of this deficient charge.