274 N.J. Super. 101 (1993)
643 A.2d 609
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HARRY DeLUZIO, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN KELTY, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOIS SANDERS, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD SANDERS, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THEODORE WATLEY, DEFENDANT-APPELLANT.[1]
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1993.
Decided June 8, 1993.
*104 Before Judges GAULKIN, HAVEY and STERN.
Sonia G. Wagner, Designated Counsel, argued the cause for appellant Harry De Luzio, A-3076-88T4 (Zulima V. Farber, Public Defender, attorney; Ms. Wagner on the brief).
Barbara J. Lieberman, Designated Counsel, argued the cause for appellant John Kelty, A-3078-88T4 (Zulima V. Farber, Public Defender, attorney; Ms. Lieberman on the brief).
David B. Glazer, Designated Counsel, argued the cause for appellant Lois Sanders, A-3079-88T4 (Zulima V. Farber, Public Defender, attorney; Mr. Glazer on the brief).
Anderson D. Harkov, Designated Counsel, argued the cause for appellant Donald Sanders, A-3080-88T4 (Zulima V. Farber, Public Defender, attorney; Mr. Harkov of counsel and on the brief).
John Vincent Saykanic, Designated Counsel, attorney for appellant Theodore Watley, A-3295-88T4 (Zulima V. Farber, Public Defender, attorney; Mr. Saykanic of counsel and on the brief).
Larry R. Etzweiler, Deputy Attorney General, argued the cause for respondent State of New Jersey, A-3076-88T4, A-3078-88T4, A-3079-88T4, A-3080-88T4 and A-3295-88T4 (Robert J. Del Tufo, Attorney General, attorney; Mr. Etzweiler of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
These appeals involve convictions for offenses arising out of the defendants' involvement in Co-Op Investments, a complex pyramid scheme. Following a jury trial defendants Donald and Lois Sanders were found guilty of conspiracy, N.J.S.A. 2C:5-2 (count one); theft by deception, N.J.S.A. 2C:20-4 (count two); promoting *105 gambling, N.J.S.A. 2C:37-2 (count three); possession of gambling records, N.J.S.A. 2C:37-3 (count five); tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count twenty-two); tampering with records, N.J.S.A. 2C:21-4a (count twenty-three), and theft by unlawful taking, N.J.S.A. 2C:20-3a (count twenty-six).[2] Lois Sanders was also convicted on counts eight through thirteen and fifteen of conferring gifts to public servants, N.J.S.A. 2C:27-6b. Theodore Watley was found guilty under counts two, three and five. Harry DeLuzio, a state police officer, was found guilty on count four, promoting gambling, N.J.S.A. 2C:37-2, and on count seven, official misconduct, N.J.S.A. 2C:30-2b, and John Kelty, also a State Police officer, was found guilty of the same offenses embodied in counts four and six.[3]
Donald Sanders (Donald) was sentenced to concurrent presumptive four year sentences on counts three and five. On count two he was given a consecutive presumptive four year sentence. Count one was merged into counts two and three. He received concurrent sentences on the other convictions, for an aggregate of eight years imprisonment. After merger of the conspiracy conviction, Lois Sanders (Lois) was sentenced to a presumptive four year term on count three and a concurrent four year term on count five. She received a consecutive four year term on count two. She received concurrent sentences on the remaining counts, for an aggregate eight year sentence. Watley received a presumptive four year sentence on count two and a concurrent four year sentence on count three. He received a concurrent six month term on count five. DeLuzio and Kelty received concurrent probationary terms of one year, were fined an aggregate of *106 $5,000 and were ordered to forfeit their positions as New Jersey state police officers.
These defendants appeal from the resulting judgments. The issues raised by each defendant are listed in their entirety in the appendix. We reverse the convictions of DeLuzio and Kelty. We reverse the gambling related convictions of Donald, Lois and Watley. We affirm the remaining convictions and sentences as to them. However, with respect to Watley, we also remand for further proceedings relating to the claim that he was denied his right to counsel. If the remand judge ultimately concludes that Watley was deprived of his constitutional right to counsel, a new trial shall be ordered on count two as well. If the judge, however, finds that he was not denied his right to counsel, the judgment of conviction on that count shall stand. Following the hearing on remand, the State may seek leave to appeal before any new trial is conducted, and defendant may seek further relief before us by filing a new appeal if the judge rules that he is not entitled to a new trial on that count.
This case has already been to the Supreme Court on two occasions. The trial judge granted the Sanders' motion to suppress certain evidence seized in the State of Illinois. Thereafter, pursuant to negotiated pleas, Donald and Lois each pled guilty to counts one, two, three, eight and nine. The remaining counts were dismissed. Both were sentenced to probation for five years, conditioned upon service of 364 days in the Ocean County Jail. Donald was ordered to pay a fine of $30,000, and Lois was ordered to pay a $15,000 fine. State v. Sanders, 212 N.J. Super. 599, 601-602, 515 A.2d 1256 (App.Div. 1986). Because defendants received probationary sentences for second degree crimes, the State appealed, pursuant to N.J.S.A. 2C:44-1f(2), from the sentences imposed on both Donald and Lois.[4] We dismissed the appeal because bail pending appeal was not set until thirteen days *107 following the imposition of sentence while their sentences were "partially executed." State v. Sanders, supra, 212 N.J. Super. at 606, 515 A.2d 1256. The Supreme Court, however, reversed and remanded for resentencing because the appeal was not precluded by the constitution and "the sentences violated the provisions of the sentencing statute" for the second degree crimes. State v. Sanders, 107 N.J. 609, 622, 527 A.2d 442 (1987).
After the remand the Sanders moved to retract their pleas on the grounds that they did not understand at the time that "there was a presumption of incarceration" and did not expect to be sentenced to state custodial terms. Their motions were granted.[5]
In the interim the State was granted leave to appeal the order granting suppression of evidence as to other defendants. The Supreme Court ultimately reversed the trial court's determination and ruled that the evidence obtained in Illinois previously subpoenaed here could be used at defendants' trial. State v. Curry, 109 N.J. 1, 16-17, 532 A.2d 721 (1987).
At the conclusion of the State's case the trial judge granted various motions for judgments of acquittal. As to the Sanders, he granted the motions addressed to count fourteen (involving a gift to a public servant, N.J.S.A. 2C:27-6b) and counts twenty-four and twenty-five (terroristic threats, N.J.S.A. 2C:12-3a). He granted the motion of the defendants, other than Donald and Lois, with respect to count one, the conspiracy charge, but denied the remainder of the motions as to the other counts. As to Watley, however, he reduced the charges embodied in the second count to third degree theft because the State had not proven that he stole in excess of $75,000. In denying the motion to dismiss the conspiracy charge embodied in count one as to the Sanders, the judge amended the allegation to only allege a conspiracy to *108 promote gambling and theft. He did so because he "wanted to keep conspiracy simple."
On June 9, 1988, the twenty-ninth day of trial, while the jury was deliberating, the Sanders moved for a judgment of acquittal on counts one and two, arguing for the first time that the charges embodied in those counts were third degree, not second degree crimes. They asserted that there was no second degree theft above $75,000 at the times alleged in the indictment, and that therefore the conspiracy count, as well as the theft count,[6] had to be downgraded. The judge denied their oral motions at that time. At sentencing he rejected their arguments that the original sentences should be reinstated as appropriate for third degree crimes.

I.
We briefly recite the facts as developed at the trial which lasted thirty days over a period of six weeks in May and June of 1988. In light of our disposition, a detailed statement of facts is unnecessary. While the Sanders pled guilty in 1985, the facts set forth in our prior opinion on the State's appeal from the sentences then imposed embody the essential facts developed at the subsequent trial. State v. Sanders, supra, 212 N.J. Super. at 602-603, 515 A.2d 1256.
Lois Sanders and her son, Donald, commenced operating "Co-Op Investment Company" (Co-Op) in New Jersey around December of 1980. The State alleged that Co-Op was a fraudulently operated pyramid scheme, which constituted illegal gambling. Generally, Lois was initially in charge of organization, while Donald was the principal salesman. Kelty and DeLuzio, State *109 police officers, provided "security" for "Co-Op," and Watley assisted Lois and Donald in running the operation.
The State has described the scheme as follows:
In the Co-Op scheme, the money which an "investor" gave was $650, of which $25 was allegedly a "membership fee" to cover Co-Op expenses, and $625 was an "investment." The "investor" received a membership card with an identification number which was used to track his or her "investment." The "investor's" return generally was supposed to be either $17,500, or $35,000, contingent upon a "star system" designed to encourage paid "investors" to bring new "investors" into the scheme; investors who did so won "stars" on their charts and the reward of higher "dividends." A chart system was established, and, generally, an "investor's" name initially entered a low position on a chart; as new "investors" came in, new charts (subcharts) would be generated and the initial "investor's" name would rise to higher and higher positions until he or she ultimately reached a pay-off position. The term "pyramid" arose from the fact that such chart systems, as they geometrically grew with the influx of new "investors," took on the physical shape of a pyramid.
According to the presentation, Co-Op had a mechanism for "killing the charts," that is, for stopping the geometric "pyramid" growth; namely, the "sale" of charts to charitable organizations, which would "kill" the chart positions by raffling them to their members, who would gain a tax write-off for the cost of the raffle subscription. In fact, this "killing" mechanism was part of the fraud; no one actually understood how it should work, and, more important, defendant Donald Sanders lied when he told potential "investors" that Co-Op knew charitable organizations which were interested in joining this dubious scheme.
According to the State's brief, the investment scheme
constituted gambling because it possessed the three qualities which define gambling: consideration, prize and chance. The consideration was the sum of $650 which each "investor" gave to the program. The prize was the "dividend" of $35,000 which each participant hoped to win. And the "chance," or "future event over which the actor has little or no control" was the contingency that an adequate number of people  and the number was truly large  would enter the program after the "investor"' entered, so that he or she would be able to reach a sufficiently high position on the charts to obtain a pay-off.
The State proved that substantial amounts were "invested" by members of the public, and "in excess of one billion people" would have had to invest in "Co-Op" before "dividends" could have been paid to the 400 people who invested at one particular meeting on February 24, 1981. Hence the State alleged that the Co-Op leaders obtained funds by deception and that their literature was fraudulent in representing to investors that there was "minimal risk" involved.
*110 The State further contended that the lottery was fraudulently operated by misrepresenting the number of people who receive the $35,000 prize and by understating the time it took to move up on the charts. There was also proof that "shills" were used to act at public meetings as if they were recipients of cash distributions. There was further proof that the charts were manipulated in favor of certain favored "investors" to expedite their pay-offs and that Donald and Lois were cheating even their co-conspirators by "having secret control of the first ten names on the original charts."
The appearance of State troopers "lent credibility" to the investment program. In addition to DeLuzio and Kelty, other State troopers provided "security" at Co-Op meetings. As DeLuzio and Kelty were supervisors of some of the other troopers, their work for Co-Op gave the impression that this "moonlighting" by State police officers was authorized.
According to the State's case, DeLuzio and Kelty did more than merely provide security. They assisted Co-Op in recruiting other law enforcement officers to provide "security" at Co-Op meetings and in convincing the other troopers that the "moonlighting" was legal. DeLuzio and Kelty were paid for the security efforts and, in turn, paid other troopers they recruited. Kelty accepted a free "membership." DeLuzio paid the $650 membership fee.[7] Thus, DeLuzio and Kelty had a financial interest in the investment. There was also evidence that DeLuzio and Kelty knew about the illegal possession of handguns by other conspirators but did nothing about it.
Watley gave a pretrial statement. He testified before the grand jury that he never made any agreement to receive a percentage of the investments received "as a result of [his] solicitation," that he *111 was "upset" about what he learned concerning the program and that he spoke at a Cherry Hill meeting to "calm down" members of the audience who also wanted their money back. However, there was proof that between March 17, 1981, and March 25, 1981, Watley received $12,000 and deposited $8,000 after revealing to Donald before the Cherry Hill meeting of March 16, 1981, that he knew that several of the top names on the charts were really Donald and Lois and that he wanted money not to "expose all the problems and, basically, that this whole thing was a scam."
There was testimony from James R. Stephens, an employee of the Bureau of Securities, who was deemed qualified as an expert, that the lottery was illegal gambling because it involved "consideration, prize and chance." A $650 payment was the consideration, and the prize was the $35,000 expected return. Chance was involved because of the "structure" and the need for a large number of subsequent investments before a return could be realized. The expert also testified that Co-Op was a "pyramid scheme." The expert noted that for the 400 people who invested on February 24, 1981, "in excess of one billion people" would have had to join the investment in order to permit the investors to obtain a return of $35,000.
The expert also testified that Co-Op was run in a "fraudulent manner." The "pitch sheet" ("sales presentation") falsely referred to "guarantees" and emphasized the "minimal risk to the investor." The organizers did not "advise the prospective investor [of] the true facts" so that the person could make a reasonable decision whether or not they should or should not invest, particularly when there was no explanation about the number of subsequent investors necessary to make a return. Stephens further testified about various tactics and methods used to give a false impression about the nature of the "investment" and the scheme. Included was the appearance of New Jersey state troopers "to provide security." According to the expert, state police officers conveyed "the aura of legitimacy," and thus were "a con man's dream come true."

*112 II.
Each of the defendants claims that the convictions on counts three, four and five must be reversed because the State did not prove the elements of those offenses. We agree. In State v. Bey, 261 N.J. Super. 182, 618 A.2d 373 (App.Div. 1992), we recently held that a pyramid scheme is not a "lottery" within the meaning of N.J.S.A. 2C:37-2 because the elements of a lottery, as defined in N.J.S.A. 2C:37-1h, are not satisfied.
In Bey defendant asserted that she participated in the pyramid investment by investing $1,500 in exchange for a promised return of $12,000. However, because her name was found "on more than one pyramid" the proofs warranted a finding that "she was involved more than as an investor." 261 N.J. Super. at 184, 618 A.2d 373. We nevertheless reversed the conviction under N.J.S.A. 2C:37-2, without deciding "the general question of whether promoting a pyramid scheme is promoting gambling," at 185, because "[t]he indictment ... did not charge defendant merely with promoting gambling. It stated that defendant `materially aid[ed] an illegal lottery scheme,' (emphasis added), and then specified the illegal conduct." Ibid. (emphasis in original). Here, count four used the very same language, and count three referred to the alleged conduct as an "illegal lottery scheme."
With respect to the definition of lottery in N.J.S.A. 2C:37-1h, Judge Dreier wrote in Bey:
New Jersey's definition specifies elements beyond simply consideration, prize and chance. It specifies that the "chance" must be "represented by and differentiated by numbers or by combinations of numbers or by some other media." N.J.S.A. 2C:37-1h. In addition, the definition specifies that the winning chances are to be "determined by a drawing or by some other method based upon the element of chance." Ibid. Based on this language, we find that the method of play required in the lottery definition is not present in a pyramid scheme.
[261 N.J. Super. at 187, 618 A.2d 373.]
And the Bey court further noted:
A criminal statute must be strictly construed. State v. Meinken, 10 N.J. 348, 352-353, 91 A.2d 721 (1952). We do not perceive that a reasonable person reading our statutory lottery definition would understand that a pyramid scheme, as fraudulent as it may be, was prohibited as a "lottery." Indeed, were we to *113 interpret the lottery definition in N.J.S.A. 2C:37-1h so broadly as to include pyramid schemes, then N.J.S.A. 2C:37-1h likewise could be extended to include receipt of bets on horse racing and organized poker games, even where these activities are addressed separately in the statute.
 [Id. 261 N.J. Super. at 188-189, 618 A.2d 373 (footnote
 omitted).]
In light of Bey, the convictions of Lois, Donald and Watley on count three must be reversed. Given the judge's instructions in this case, we cannot conclude that the jury found defendants guilty on count three on any other basis than for their wrongdoing in connection with a lottery, even assuming that another basis of promoting gambling was alleged.[8] Moreover, the convictions on count four as to Kelty and DeLuzio, and counts three and five as to Lois, Donald and Watley must be reversed because those counts each refer to promoting gambling and possession of gambling records, respectively, relating to an "illegal lottery scheme." Moreover, our review of the jury instructions makes clear that the jury undoubtedly rendered its verdict on these counts based upon a conclusion that the defendants were involved in an illegal lottery.
Most of the elements relating to counts two, three, four and five were referred to in the charge relating to the purpose and scope of the conspiracy embodied in count one. The judge indicated that there could be a conviction for conspiracy if a defendant conspired to violate the gambling laws, and that gambling and possession of gambling records could relate to an illegal lottery. With respect to an illegal lottery, the judge charged the jury as follows:
Now, was there an agreement here? The agreement does not have to be in writing, it doesn't have to have formality, but there has to be two people, at least two people who have a common purpose. Now, the State says here their common purpose was a theft by deception, and that included in that conspiracy, that agreement to commit theft by deception, was also an agreement that they would *114 commit that theft by deception by means of an illegal lottery. Now, that's the State's contention. (emphasis added).
With respect to the conspiracy and the substantive offenses they conspired to commit, the judge advised the jury that a pyramid scheme could constitute an illegal lottery. He said, among other things:
Mr. Stephens, I believe, talked about gambling and talked about price, chance and prize. Now, contest of chance means any contest, game, pool, gambling scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants or some other persons may also be a factor therein. Gambling means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the actor's control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome. Player means a person who engages in any form of gambling solely as a contestant or bettor, without receiving or becoming entitled to receive any profit therefrom other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of the particular gambling activity. Something of value means any money or property, any token, object or article exchangeable for money or property, or any form of credit. Lottery means an unlawful gambling scheme in which the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of number[s] or by some other media, one or more of which chances are to be designated the winning ones; and B, the winning chances are to be determined by a drawing or by some other method based upon the element of chance; and C, the holders of the winning chances are to receive something of value.
Now, we're not talking about bookmaking, we're not talking about numbers. The State is contending through its experts that this investment, that's been called an investment opportunity, called investment scheme, this investment scheme is really what they call a pyramid scheme and pyramid scheme is a lottery. And in New Jersey if you don't have a license, a lottery is unlawful. Unlawful means not specifically authorized by law. Now, I'm not going to repeat everything that the experts said. You saw the charts that were put up, you saw the experts talk, the professor, the doctor talked and accounting and how the charts decide and the number of people needed to help others move up. Mr. Stephens described his years with the postal service, as I recall it, and testified about this operation. He testified it's a pyramid operation and a pyramid is a lottery, it's open-ended at the bottom, chances diminish greatly as the product continues. In other words, somebody who comes in on the first chart may very well end up with his price, but somebody who comes in on the seventieth chart may very well never find enough people to push him up to the top. I'm paraphrasing what he says. The defendants say, no, this was not open-ended, that there were controls. One of the controls was that there would be a limit in the number of charts. Another control that they would have, had they gone further, I assume, is what they are saying, if they had *115 been allowed to continue, they would have had non-profit groups which would sort of put a stop at the number of shares, the non-profit groups, people would make a donation, you knew you weren't going to make any money, something you could give to your church and maybe your church could turn it, maybe deduct from your taxes. It wasn't really developed from the testimony, that was the contention that there would be some kind of stop on the product. It wasn't just runaway. (emphasis added).[9]
In light of the legal conclusion embodied in Bey, the charges embodied in the indictment and the instructions given to the jury, the convictions on counts three, four and five must be reversed.

III.
With respect to the official misconduct counts, it is clear that the judge instructed the jury that DeLuzio and Kelty could be found guilty if they participated or failed to detect and arrest for participation in an "illegal lottery." The judge charged:
And they had the duty to enforce the criminal laws of the State of New Jersey to the best of their ability. They have the duty of apprehension of violators and such duties are clearly inherent in the nature of the office. Now, the State says that even though they had this duty, they had a purpose to obtain a benefit for themselves, and we treat each of them separately although I mention them together, and they knowingly did refrain from performing duties imposed on them by law and clearly inherent in nature of their office. They did refrain from reporting, investigating, detecting, arresting and prosecuting violators of the criminal law of the State of New Jersey in that they, each of them, did observe the conduct of illegal lottery and theft and failed to report it, investigate it, detect it or arrest and prosecute the violators in violation of the criminal laws of the State of New Jersey. (emphasis added).
The judge continued:
The defendants deny that they knowingly refrained from performing a duty imposed upon them by law because the defendants contend that this was not an illegal lottery known to them, that they did not sit idly by while a crime is being committed, the crime of theft. You find that there was a theft, you find that they had no knowledge of theft, they had no knowledge of illegal lottery, that's their contention. And, of course, you have to weigh the facts. The State says this was *116 an illegal lottery obvious to anyone who took a look at it, all these three defendants joined it and they provided security for it. (emphasis added).
Count six charges Kelty, with Ebert, of official misconduct in violation of N.J.S.A. 2C:30-2b. It alleged that "with the purpose to obtain a benefit in excess of $200 for themselves and others," they failed to perform their official duties by knowingly refraining "from reporting, investigating, detecting, arresting and prosecuting violators of the criminal laws of the State of New Jersey, the said violations occurring in their presence and with their knowledge" in that they did knowingly "allow, permit, encourage, solicit, assist and facilitate the conduct of an illegal lottery, that is, Co-Op Investments." In count seven DeLuzio was charged with the same offense because he "knowingly did allow, permit, encourage, solicit, assist and facilitate both the commission of theft by deception of a value in excess of $200 dollars, the property of participants in Co-Op Investments and the conduct of an illegal lottery, that is, Co-Op Investments." It is clear that DeLuzio was charged with official misconduct based upon his non-performance of official duties related to the theft as well as the illegal lottery. Nevertheless, we must reverse the conviction on count seven because again there is no way of telling from this record or any special verdict that the jury concluded that DeLuzio neglected to perform his public duties only with respect to the theft. Further, the official misconduct charges relating to Kelty were limited exclusively to his non-performance of public duties related to the lottery. Hence, we must reverse both convictions because the jury could have found misconduct based on participation in a pyramid scheme which does not constitute an "illegal lottery." Here, the absence of a special verdict prohibits us from ascertaining from the record, insofar as DeLuzio is concerned, the basis for the conviction, and we cannot conclude that it was related to his improper conduct with respect to the theft. See State v. Still, 257 N.J. Super. 255, 260, n. 3, 608 A.2d 404 (App.Div. 1992) (merger required in the absence of a special verdict). We do not now address any issue regarding the ability to retry DeLuzio on count seven. We note, however, that if there is a justification in the *117 record for an instruction on ignorance of the law, the trial judge should give that instruction.

IV.
The State argues that, in light of Bey, we should enter disorderly persons convictions on counts three and four because defendants can be deemed guilty of gambling other than by lottery which would constitute a disorderly persons offense. N.J.S.A. 2C:37-2b. See Bey, supra, 261 N.J. Super. at 184, 618 A.2d 373. However, we cannot conclude that the jury found defendants guilty of gambling other than through a lottery. The State also contends that the convictions on count five, under N.J.S.A. 2C:37-3, for possession of gambling records, may be sustained on the same basis, but again we cannot find that the jury found defendants to be in possession of any gambling records other than those pertaining to a lottery. See N.J.S.A. 2C:37-3c(2). For the same reason, we cannot conclude that there was official misconduct by Kelty or DeLuzio as a result of their failure to report any activity other than what the jury may have found to be an illegal lottery scheme. Given the allegations of the relevant counts and the holding in State v. Bey, supra, we direct "the entry of a judgment of acquittal" on counts three, four and five. State v. Bey, supra, 261 N.J. Super. at 189, 618 A.2d 373. Given the allegations of count six, we also direct the entry of a judgment of acquittal in favor of Kelty on that count.
As noted, this indictment alleged in counts three and four that defendants, respectively, promoted gambling with respect to an "illegal lottery scheme." Hence we need not conclude whether the evidence warranted a conviction on promoting gambling other than by participating in a pyramid scheme.

V.
Except as above stated, we affirm the remaining convictions and offer only the following additional comments.
*118 We reject the contentions of Donald, Lois and Watley that the taking of money incident to a pyramid scheme cannot constitute theft by deception. See State v. Bey, supra, 261 N.J. Super. at 184, 618 A.2d 373.
Only Watley contends that the evidence was insufficient to warrant a conviction on count two. He also complains that his motion for a new trial on that count should have been granted. Although the judge reduced the degree of theft from second to third degree because of the absence of proof of a theft above $75,000, the judge denied the motions for a judgment of acquittal and a new trial. We find that there was sufficient proof that Watley was a participant in the fraudulent scheme and that the jury could have so found based on the proofs, including the reasonable inferences that flow therefrom. Moreover, the proofs permitted the jury to find that, after Watley learned that the "Co-Op" was run in a fraudulent manner, he accepted a payment of at least $8,000, and, in any event, did not renounce his interest in the scheme. The proofs were sufficient to sustain the conviction and cannot be said to be against the weight of the evidence. See State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967); R. 3:18-1; R. 3:20-1.

VI.
Watley contends that the absence of his counsel during pre-trial motions, the motions for judgment of acquittal, the summations (other than his own), the trial judge's charge, jury questions and supplemental instructions, deprived him of his right to counsel in violation of the Sixth Amendment. Defendant contends that he was forced to represent himself pro se while pre-trial motions were argued after his original counsel successfully moved to be relieved.[10] Counsel was thereafter designated by the Public Defender, *119 and there is some suggestion in the record that at least for some purposes and at some times, defendant elected to proceed pro se.[11] Designated counsel was involved in a federal trial at the same time this matter was being tried. The record reflects at least one occasion where counsel stated that Watley consented to his "absence from the rest of the proceedings" for some of the summations, the judge's charge and deliberations, and the rendering of the verdict. Due to an obligation in federal court, counsel was not present during trial when the motions for judgment for acquittal were made, when the State and perhaps some co-defendants delivered their summations, and when the judge charged the jury, answered its questions and delivered supplementary instructions.
A defendant is denied the effective assistance of counsel when, not having waived his right to counsel, no attorney is present "at a critical stage of the criminal proceedings." Siverson v. O'Leary, 764 F.2d 1208, 1217 (7th Cir.1985). No "affirmative" proof of prejudice must be shown in those circumstances. See also State v. Savage, 120 N.J. 594, 616, 577 A.2d 455 (1990). When determining whether defendant was denied effective assistance of counsel because of the absence of an attorney during a critical stage, such as "during jury deliberations and the return of the verdict [the standard] is ... whether the error was harmless beyond a reasonable doubt." Siverson v. O'Leary, supra, 764 F.2d at 1217. The test is not the same as other issues relating to the effective assistance of counsel in terms of preparation or presentation of the case. Id. Compare Strickland v. Washington, *120 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). Clearly, defendant had the right to have his counsel present during trial, the jury deliberations, when its questions were being asked and considered and when supplemental instructions were being given. See Siverson, supra, 764 F.2d at 1213-18; see also U.S. ex rel. Thomas v. O'Leary, 856 F.2d 1011, 1014 (7th Cir.1988); compare United States v. Morrison, 946 F.2d 484, 503-504 (7th Cir.1991) (no prejudice to defendant where the trial judge ordered the jury polled in the absence of his counsel).
The State emphasizes that there was no harmful error. It notes that defendant's counsel asked to be excused from the motions for acquittal, made arrangements for another attorney to argue on his behalf, and reviewed the jury instructions before they were given. The State further contends that defendant waived his right to counsel, at least during certain pretrial proceedings, that defendant and his counsel purposely developed a strategy of "nonchalance" to emphasize the insignificance of Watley in the conspiracy and illegal activities, that defendant essentially consented to counsel's absence as a means of de-emphasizing Watley's role, that counsel was available to communicate by phone with the defendant and others when he was not present and that, in any event, there was no prejudice because defendant was, in essence, represented by counsel for defendants who shared common interests on various issues.
We need not discuss the need for consent on the record to joint representation by counsel. See State v. Bellucci, 81 N.J. 531, 410 A.2d 666 (1980); R. 3:8-2. Nor need we consider the potential conflict of representation of defendant by an attorney for a co-defendant, particularly if Watley tried to diminish his own role. What is "now unmistakably clear [is] that defendant need not show he was prejudiced by the absence of counsel," at least with respect to certain stages of the criminal proceeding. State v. McCombs, 81 N.J. 373, 376, 408 A.2d 425 (1979). In McCombs, our Supreme Court held that the absence of counsel during the *121 jury selection process required the reversal of defendant's conviction without the showing of "actual prejudice." 81 N.J. at 375, 408 A.2d 425. We cannot say that the absence of counsel during summations, jury instructions and supplemental instructions is any less serious. However, some aspects of the record before us do lend some support for the State's contention that Watley and his counsel agreed that, for strategic purposes, defense counsel's non-appearance was beneficial to defendant. Although, inappropriately, there was no express waiver of the right to counsel or consent to counsel's non-appearance during the trial proceedings, his counsel referred to Watley's consent at the end of the trial, and the State's position that the absence was with defendant's consent warrants development of record. We therefore remand the matter to the Law Division for a full exploration and consideration of the issues relating to the deprivation of his right to counsel.

VII.
The Sanders contend that the State could not appeal, pursuant to N.J.S.A. 2C:44-1f(2), from the sentences imposed following their initial 1985 guilty pleas because the offenses on which they were convicted did not constitute crimes of the first or second degree. As noted, the convictions on counts one and two, to which the Sanders pled guilty in 1985, were treated as second degree crimes when the matter was first before us and the Supreme Court on the State's appeal, and thereafter following the Supreme Court's reversal throughout much of the trial. Donald and Lois now insist that because they did not plead to second degree crimes, the State could not appeal from the sentences imposed, and that the 1985 judgment from which the State appealed, including the probationary sentences, should be reinstated. The Sanders address this point in a number of contentions and claim that they are denied constitutional rights against double jeopardy and ex post facto prosecution if the original judgment is not reinstated. At oral argument before us, however, they both acknowledged that the original sentence was illegal, irrespective of *122 the degree of the crime embodied in counts one and two, because 364 days could not be imposed as a condition of probation for offenses occurring on the dates covered by the indictment. N.J.S.A. 2C:43-2b(2), raising the custodial maximum period of probation from 180 days to 364 days, was not amended until after the offenses covered by the indictment. Moreover, while we acknowledge the unfortunate mistake made by all courts and counsel in the case concerning the degree of theft embodied in count two, because N.J.S.A. 2C:20-2 did not make theft of $75,000 or more a crime of the second degree, see N.J.S.A. 2C:20-2b(1)(a), until June 15, 1981, after the offense occurred, we nevertheless conclude that the State had the right to appeal pursuant to N.J.S.A. 2C:44-1f(2) because the Sanders pled guilty to a conspiracy as embodied in count one which included second degree crimes.[12] While both defendants pled guilty only to counts one, two, three, eight and nine, both were advised that count one was a second degree conspiracy and both expressly acknowledged that the conspiracy included the commission of "official misconduct" in violation of N.J.S.A. 2C:30-2b, a second degree crime. Therefore, the conspiracy to which defendant pled guilty was a second degree conspiracy. See N.J.S.A. 2C:5-2; N.J.S.A. 2C:5-4a.
Donald and Lois now endeavor, for the first time, to question the factual basis for the pleas entered on June 6, 1985, and note that the trial judge's dismissal of various aspects of the conspiracy count during the 1988 trial removed the second degree offenses from the conspiracy. However, their 1985 plea constituted a waiver of their right to contest the State's ability to prove the facts embodied in the indictment, and they cannot now challenge the validity of their plea to count one as a ground for contending that the State's appeal as to the sentence imposed thereafter was illegal. See State v. Robinson, 224 N.J. Super. 495, 540 A.2d 1313 *123 (App.Div. 1988); see also State v. Vasquez, 129 N.J. 189, 193-95, 609 A.2d 29 (1992). Accordingly, the State could appeal from the sentence imposed on count one following the Sanders' guilty plea, and because of the Supreme Court's direction that the defendants' sentence was illegal for violating "the provisions of the sentencing statute," State v. Sanders, supra, 107 N.J. at 622, 527 A.2d 442, which direction would remain at least insofar as count one is concerned because it was a second degree crime, the proceedings which occurred following the Supreme Court's remand by virtue of defendants' motion to withdraw their guilty pleas cannot now be collaterally attacked.
The Sanders also argue that the sentences imposed following the convictions at trial are excessive and unfair because they now are to serve eight years in prison for third degree crimes, whereas they received only 364 days in county jail as a condition of probation for second degree crimes. However, the fact that the trial judge, after a plenary trial, learned of the magnitude of the thefts and concluded that a state prison sentence was warranted cannot be said to constitute unconstitutional vindictiveness or a violation of due process. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Further, because the sentence initially imposed (at least on count one) following the plea was illegal, we are not dealing with the presumption of vindictiveness established in North Carolina v. Pearce, supra. That principle does not even apply where a greater sentence is imposed after trial following an appeal which was taken after defendants initially pled guilty. Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).
Neither Donald nor Lois was a first offender entitled to the presumption against imprisonment, N.J.S.A. 2C:44-1e, and both received presumptive sentences for the third degree crimes, the most serious offenses for which they were convicted following the trial. As we are vacating the convictions on counts three and five, each defendant remains subject only to a four year custodial *124 sentence, and we need not consider any issue related to the imposition of consecutive sentences.

VIII.
The judgments of conviction against Kelty and DeLuzio are reversed. Counts three and five as to Donald Sanders, Lois Sanders and Theodore Watley are reversed. The convictions on the other counts as to the Sanders and the sentences imposed thereon are affirmed. The conviction on count two as to Watley is affirmed, subject to the hearing on his right to counsel. The matter is remanded to the Law Division for the entry of corrected judgments and further proceedings consistent with this opinion.

APPENDIX
Defendant DeLuzio argues as follows:
POINT I THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A EVID.R. 8(1) HEARING PRIOR TO ITS ADMISSION OF EVIDENCE PURSUANT TO THE COCONSPIRATOR EXCEPTION TO THE HEARSAY RULE, VIOLATED THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DEFENDANTS DELUZIO, EBERT AND KELTY TO CONFRONT WITNESSES AND DENIED THEM DUE PROCESS.
POINT II THE TRIAL COURT ERRED IN PERMITTING JAMES R. STEPHENS TO TESTIFY AS AN EXPERT ON THE SUBJECT OF ILLEGAL LOTTERIES TO TESTIFY AS AN EXPERT ON MATTERS NOT REQUIRING SPECIALIZED KNOWLEDGE, AND TO RENDER A LEGAL OPINION AS TO THE APPLICABILITY OF THE NEW JERSEY GAMBLING LAW TO CO-OP INVESTMENTS, AND FURTHER DENIED TO DEFENDANTS DELUZIO, EBERT AND KELTY THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
POINT III THE SELECTIVE PROSECUTION OF DELUZIO, EBERT AND KELTY DENIED THEM EQUAL PROTECTION, DUE PROCESS AND FUNDAMENTAL FAIRNESS AND VIOLATED THEIR STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST COMPULSORY SELF-INCRIMINATION.
POINT IV DEFENDANTS DELUZIO, EBERT AND KELTY WERE DENIED THEIR STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND ARE ENTITLED TO A DISMISSAL OF THE INDICTMENT AGAINST THEM BECAUSE THEIR CONDUCT AT THE TIME OF THEIR PARTICIPATION IN CO-OP DID NOT CONSTITUTE A CRIME.
POINT V THE TRIAL JUDGE ERRED IN FAILING TO CHARGE THE AFFIRMATIVE DEFENSE OF IGNORANCE OR MISTAKE OF LAW PURSUANT *125 TO N.J.S.A. 2C:2-4C(2)(3) AND THUS DENIED DEFENDANTS DELUZIO, EBERT AND KELTY A FAIR TRIAL.
POINT VI THE TRIAL JUDGE ERRED IN DENYING THE SEVERANCE MOTIONS OF DEFENDANTS DELUZIO, EBERT AND KELTY AND VIOLATED THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DUE PROCESS.
POINT VII DEFENDANTS DELUZIO, EBERT AND KELTY WERE DENIED THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS WHEN THE TRIAL JUDGE CROSSED THE LINE FROM AN IMPARTIAL ARBITER TO AN ADVOCATE FOR THE STATE.
POINT VIII THE TRIAL COURT ERRED IN ITS CHARGE TO THE JURY BY UNCONSTITUTIONALLY SHIFTING THE BURDEN OF PROOF TO THE DEFENSE.
POINT IX DEFENDANTS KELTY, DELUZIO AND EBERT COULD NOT HAVE KNOWN THAT THE ACTIVITIES OF CO-OP INVESTMENTS WERE PROSCRIBED BY N.J.S.A. 2C:37-1, THUS THE STATUTE IS VOID FOR VAGUENESS AS APPLIED TO THIS CONDUCT. (THIS POINT WAS NOT RAISED BELOW.)
POINT X THE DEPUTY ATTORNEY GENERAL'S MISCONDUCT DURING TRIAL AND SUMMATION CONSTITUTES REVERSIBLE ERROR.
POINT XI WHERE IT WAS DISCOVERED AT THE CONCLUSION OF TRIAL THAT THE SANDERS' GUILTY PLEAS AND RESULTING SENTENCES SHOULD HAVE BEEN ALLOWED TO STAND AS A MATTER OF LAW, THE GUARANTEE OF FUNDAMENTAL FAIRNESS WAS DENIED TO DEFENDANTS KELTY, EBERT AND DELUZIO. (THIS POINT WAS RAISED IN PART BELOW.)
POINT XII THE DEPUTY ATTORNEY GENERAL'S IMPROPER COMMENT UPON DEFENDANTS' FAILURE TO TESTIFY WARRANTS A NEW TRIAL. (THIS POINT WAS RAISED IN PART BELOW.)
POINT XIII THE TRIAL COURT ERRED IN FAILING TO SEQUESTER DEPUTY ATTORNEY GENERAL ROBERT DONOVAN WHO TESTIFIED IN THIS MATTER AND IN PERMITTING HIM TO APPEAR AS COUNSEL FOR THE STATE.
POINT XIV THE TRIAL JUDGE'S COMMENT ON DEFENDANT WATLEY'S FAILURE TO TESTIFY VIOLATED THE CONSTITUTIONAL PRIVILEGE OF DEFENDANTS DELUZIO, EBERT AND KELTY AGAINST SELF-INCRIMINATION.
POINT XV THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DEFENDANTS DELUZIO, EBERT AND KELTY TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES WERE VIOLATED WHEN THE TRIAL JUDGE PERMITTED EVIDENCE ILLEGALLY SEIZED IN ILLINOIS TO BE INTRODUCED AT TRIAL.
POINT XVI THE TRIAL COURT VIOLATED THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DEFENDANTS DELUZIO, EBERT AND *126 KELTY TO A TRIAL BY AN IMPARTIAL JURY WHEN IT REFUSED TO RECALL THE JURORS AND TO VOIR DIRE THEM.
POINT XVII THE TOTALITY OF THE TRIAL ERROR IN THIS MATTER DENIED DEFENDANTS DELUZIO, EBERT AND KELTY A FAIR TRIAL.
Defendant Kelty argues:
POINT I DEFENDANTS KELTY AND DELUZIO COULD NOT HAVE KNOWN THAT THE ACTIVITIES OF CO-OP INVESTMENTS WERE PROSCRIBED BY N.J.S.A 2C:37-1, THUS THE STATUTE IS VOID FOR VAGUENESS AS APPLIED TO THIS CONDUCT.
POINT II THE DEPUTY ATTORNEY GENERAL'S MISCONDUCT DURING TRIAL AND SUMMATION CONSTITUTES REVERSIBLE ERROR.
A. PROSECUTORIAL MISCONDUCT DURING THE COURSE OF THE TRIAL WARRANTS AN ACQUITTAL OR IN THE ALTERNATIVE A NEW TRIAL.
B. THE PROSECUTOR'S COMMENTS DURING SUMMATION WARRANT AN ACQUITTAL, OR IN THE ALTERNATIVE, A NEW TRIAL.
C. THE PATTERN OF PROSECUTORIAL MISCONDUCT WARRANTS THE ENTRY OF JUDGMENTS OF ACQUITTAL FOR DEFENDANTS KELTY AND DELUZIO IN THE ALTERNATIVE A NEW TRIAL SHOULD BE GRANTED.
POINT III WHERE IT WAS DISCOVERED AT THE CONCLUSION OF TRIAL THAT THE SANDERS' GUILTY PLEAS AND RESULTING SENTENCES SHOULD HAVE BEEN ALLOWED TO STAND AS A MATTER OF LAW, THE GUARANTEE OF FUNDAMENTAL FAIRNESS WAS DENIED DEFENDANTS KELTY AND DELUZIO.
POINT IV THE TRIAL COURT ERRED IN PERMITTING JAMES R. STEPHENS TO TESTIFY AS AN EXPERT ON THE SUBJECT OF ILLEGAL LOTTERIES, TO TESTIFY AS AN EXPERT ON MATTERS NOT REQUIRING SPECIALIZED KNOWLEDGE, AND TO RENDER A LEGAL OPINION AS TO THE APPLICABILITY OF THE NEW JERSEY GAMBLING LAW TO CO-OP INVESTMENTS, AND FURTHER DENIED DEFENDANTS THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
POINT V IMPROPER COMMENT UPON THE DEFENDANTS' FAILURE TO TESTIFY WARRANTS A NEW TRIAL (PARTIALLY RAISED BELOW.)
POINT VI THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD AN EVID.R. 8(1) HEARING PRIOR TO ITS ADMISSION OF EVIDENCE PURSUANT TO THE CO-CONSPIRATOR EXCEPTION TO THE HEARSAY RULE, AND VIOLATED THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DEFENDANTS DELUZIO AND KELTY TO CONFRONT WITNESSES AND DENIED THEM DUE PROCESS.
POINT VII THE SELECTIVE PROSECUTION OF DELUZIO AND KELTY DENIED THEM EQUAL PROTECTION, DUE PROCESS AND FUNDAMENTAL FAIRNESS AND VIOLATED THEIR STATE AND FEDERAL *127 CONSTITUTIONAL PROTECTIONS AGAINST COMPULSORY SELF-INCRIMINATION.
POINT VIII DEFENDANTS DELUZIO AND KELTY WERE DENIED THEIR STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND ARE ENTITLED TO A DISMISSAL OF THE INDICTMENT AGAINST THEM BECAUSE THEIR CONDUCT AT THE TIME OF THEIR PARTICIPATION IN CO-OP DID NOT CONSTITUTE A CRIME.
POINT IX THE TRIAL JUDGE ERRED IN FAILING TO CHARGE THE AFFIRMATIVE DEFENSE OF IGNORANCE OR MISTAKE OF LAW PURSUANT TO N.J.S.A. 2C:2-4c(2) AND (3) AND THUS DENIED DEFENDANTS DELUZIO AND KELTY A FAIR TRIAL.
POINT X THE TRIAL JUDGE ERRED IN DENYING THE SEVERANCE MOTIONS OF DEFENDANTS DELUZIO AND KELTY AND VIOLATED THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DUE PROCESS.
POINT XI DEFENDANTS DELUZIO AND KELTY WERE DENIED THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS WHEN THE TRIAL JUDGE CROSSED THE LINE FROM AN IMPARTIAL ARBITER TO AN ADVOCATE FOR THE STATE.
POINT XII THE TRIAL COURT ERRED IN ITS CHARGE TO THE JURY BY UNCONSTITUTIONALLY SHIFTING THE BURDEN OF PROOF TO THE DEFENSE.
POINT XIII THE TRIAL COURT ERRED IN FAILING TO SEQUESTER DEPUTY ATTORNEY GENERAL ROBERT DONOVAN WHO TESTIFIED IN THIS MATTER AND IN PERMITTING HIM TO APPEAR AS COUNSEL FOR THE STATE.
POINT XIV THE TRIAL JUDGE'S COMMENT OF DEFENDANT WATLEY'S FAILURE TO TESTIFY VIOLATED THE CONSTITUTIONAL PRIVILEGE OF DEFENDANTS DELUZIO AND KELTY AGAINST SELF-INCRIMINATION.
POINT XV THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DEFENDANTS DELUZIO AND KELTY TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES WERE VIOLATED WHEN THE TRIAL JUDGE PERMITTED EVIDENCE ILLEGALLY SEIZED IN ILLINOIS TO BE INTRODUCED AT TRIAL.
POINT XVI THE TRIAL COURT VIOLATED THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF DEFENDANTS DELUZIO AND KELTY TO A TRIAL BY AN IMPARTIAL JURY WHEN IT REFUSED TO RECALL THE JURORS AND TO VOIR DIRE THEM.
POINT XVII THE TOTALITY OF THE TRIAL ERROR IN THIS MATTER DENIED DEFENDANTS DELUZIO AND KELTY FAIR TRIAL.
Defendant Lois Sanders argues:
POINT I THE STATE VIOLATED THE EX POST FACTO PROVISION OF THE UNITED STATED AND NEW JERSEY CONSTITUTIONS BY INDICTING *128 DEFENDANT IN COUNTS ONE AND TWO WITH SECOND DEGREE CONSPIRACY AND THEFT, RESPECTIVELY.
POINT II DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY THE FAILURE TO TIMELY REALIZE THE DEFECT IN COUNTS ONE AND TWO.
POINT III THE STATE'S ATTORNEY COMMITTED REVERSIBLE ERROR IN ITS MISREPRESENTATION AS TO THE FACTS THAT WOULD BE PRESENTED AS TO COUNTS 24 AND 25 (TERRORISTIC THREATS) RESULTING IN THE ADMISSION OF IMPROPER AND INFLAMMATORY TESTIMONY.
POINT IV THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR DISMISSAL OF COUNTS EIGHT THROUGH THIRTEEN AND FIFTEEN CHARGING BENEFITS TO PUBLIC SERVANTS.
POINT V THE COURT BELOW COMMITTED REVERSIBLE ERROR BY ALLOWING WITNESSES TO TESTIFY ABOUT HEARSAY STATEMENTS BY CO-DEFENDANTS.
POINT VI THE COURT BELOW ERRED IN NOT DISMISSING COUNTS THREE AND FOUR AS CO-OP INVESTMENTS WAS NOT GAMBLING AS DEFINED IN N.J.S.A. 2C:37-1.
POINT VII THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS CHARGE TO THE JURY.
A. The trial court's instructions were one-sided against the defendants and had the result of diluting the State's burden of proof.
B. The Court below erred in its instruction as to the allegation regarding the offense of benefits to public servants.
C. The Court below erred in its comment on the evidence involving the theft of the electronic paging devices.
POINT VII THERE WAS PROSECUTORIAL MISCONDUCT IN THE STATE'S SUMMATION WHICH DEPRIVED THE DEFENDANT OF A FAIR TRIAL ON THE EVIDENCE.
POINT IX THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
POINT X THE AGGREGATE EFFECT OF THE ERRORS BELOW DENIED TO THE DEFENDANT A FAIR TRIAL.
Defendant Donald Sanders argues:
POINT I DEFENDANT'S CONVICTION MUST BE VACATED AND THE ORIGINAL JUDGMENT OF CONVICTION ENTERED BY THE TRIAL COURT ON AUGUST 1, 1985, MUST BE REINSTATED SINCE THE REVERSAL OF THE SENTENCE IMPOSED ON THAT DATE, AND ALL SUBSEQUENT PROCEEDINGS, VIOLATED DEFENDANTS CONSTITUTIONAL RIGHTS TO BE FREE FROM DOUBLE JEOPARDY AND EX POST FACTO LAW.
POINT II DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHEN THE OFFICE OF THE PUBLIC *129 DEFENDER FAILED TO TIMELY RAISE THE ISSUE DISCUSSED IN POINT I, SUPRA.

POINT III DEFENDANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL WHEN THE COURT, AND THE PROSECUTOR, COMMENTED ON DEFENDANTS' DECISION NOT TO TESTIFY AND WHEN THE COURT REPEATEDLY ADVISED THE PROSECUTOR HOW TO TRY HER CASE AND QUESTIONED WITNESSES ON HER BEHALF.
POINT IV THE TRIAL COURT ERRED WHEN IT FAILED TO SEQUESTER A DEPUTY ATTORNEY GENERAL WHO LATER APPEARED AS A WITNESS, FAILED TO GRANT A MISTRIAL WHEN THE DEPUTY ATTORNEY GENERAL TRYING THE CASE COMMITTED DELIBERATE MISCONDUCT WHILE THE OTHER DEPUTY ATTORNEY GENERAL TESTIFIED, AND WHEN IT ALLOWED THE DEPUTY ATTORNEY GENERAL WHO TESTIFIED TO VIOLATE THE RULES OF PROFESSIONAL CONDUCT IN SUCH A MANNER AS TO VIOLATE DEFENDANTS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL.
POINT V THE COURTS JURY INSTRUCTIONS PERTAINING TO COUNT THREE, PROMOTING GAMBLING, BOTH DURING ITS INITIAL CHARGE AND ITS SUPPLEMENTAL INSTRUCTION ON JUNE 9, 1988, WERE MISLEADING, PREJUDICIAL, AND HAD A CLEAR CAPACITY TO CONFUSE THE JURY.
POINT VI THE ATTORNEY GENERAL COMMITTED REVERSIBLE ERROR WHEN IT MISREPRESENTED THE FACTS IT WOULD PRESENT OR PROVE IN COUNTS 24 AND 25 RESULTING IN THE ADMISSION OF IMPROPER AND INFLAMMATORY TESTIMONY.
POINT VII THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN VIOLATING THE MANDATE OF STATE V. PHELPS, 96 N.J. 500 (1984), AND THEREBY DENIED DEFENDANTS THEIR STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND TO CONFRONT WITNESSES AGAINST THEM.
POINT VIII THE COURT BELOW ERRED IN NOT DISMISSING COUNTS THREE AND FOUR AS CO-OP INVESTMENTS WAS NOT GAMBLING AS DEFINED IN N.J.S.A. 2C:37-1.
POINT IX THERE WAS PROSECUTORIAL MISCONDUCT IN THE STATE'S SUMMATION WHICH DEPRIVED THE DEFENDANT OF A FAIR TRIAL ON THE EVIDENCE.
POINT X THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR AND DEPRIVED DEFENDANTS OF THEIR FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS BY QUALIFYING JAMES R. STEPHENS TO TESTIFY AS AN EXPERT ON THE SUBJECT OF UNLAWFUL LOTTERIES AND IN PERMITTING STEPHENS TO GIVE EXPERT TESTIMONY REGARDING THE APPLICABLE LAW IN NEW JERSEY.
POINT XI THE AGGREGATE EFFECT OF THE ERRORS BELOW DENIED DEFENDANT A FAIR TRIAL.

*130 POINT XII THE SENTENCE IMPOSED WAS UNDULY PUNITIVE MANIFESTLY EXCESSIVE, AND VIOLATED DEFENDANTS CONSTITUTIONAL RIGHT TO BE FREE FROM DOUBLE JEOPARDY.
Defendant Theodore Watley argues:
POINT I THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY ALLOWING STATE'S WITNESSES TO TESTIFY ABOUT HEARSAY STATEMENTS IN VIOLATION OF DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND CONFRONTATION OF WITNESSES AGAINST HIM.
POINT II THE TRIAL JUDGE ERRED IN PERMITTING TESTIMONY CONCERNING POSSESSION OF A GUN BY DEFENDANT WATLEY; DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL WERE VIOLATED MANDATING REVERSAL OF DEFENDANT WATLEY'S CONVICTIONS.
POINT III THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY PERMITTING THE STATE'S EXPERT WITNESS TO TESTIFY AS AN EXPERT IN UNLAWFUL LOTTERIES AND TO TESTIFY THAT CO-OP INVESTMENTS WAS GAMBLING, AN ILLEGAL LOTTERY, AND RUN IN A FRAUDULENT MANNER.
SUBPOINT A THE TRIAL COURT ERRED IN PERMITTING JAMES R. STEPHENS TO TESTIFY AS AN EXPERT IN UNLAWFUL LOTTERIES.
SUBPOINT B THE TRIAL JUDGE ERRED IN PERMITTING STEPHENS TO GIVE AN OPINION CONCERNING THE LEGALITY OF CO-OP INVESTMENTS SINCE THE SUBJECT MATTER WAS NOT BEYOND THE KEN OF THE AVERAGE JUROR, STEPHENS' TESTIMONY COULD ONLY CONFUSE RATHER THAN ASSIST THE JURORS, AND HIS OPINION IMPROPERLY EMBRACED AN ULTIMATE ISSUE THE JURY MUST DECIDE.
SUBPOINT C THE TRIAL JUDGE SHOULD HAVE BARRED STEPHENS FROM TESTIFYING AS HIS IDENTITY, QUALIFICATIONS, AND THE SUBJECT MATTER OF HIS TESTIMONY WERE NOT PROVIDED TO DEFENSE COUNSEL UNTIL THE MIDDLE OF TRIAL.
POINT IV THE TRIAL JUDGE ERRED IN NOT DISMISSING COUNTS THREE AND FOUR AS A MATTER OF LAW PRIOR TO TRIAL, AFTER THE STATE RESTED, AND AT THE MOTION FOR NEW TRIAL FOLLOWING THE VERDICTS AS CO-OP INVESTMENTS WAS NOT GAMBLING AS DEFINED IN N.J.S.A. 2C:37-1; CRIMINAL RESPONSIBILITY CANNOT ATTACH SINCE ONE WOULD NOT CONTEMPLATE THAT CO-OP CONSTITUTED PROSCRIBED GAMBLING OR A LOTTERY.
POINT V THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY I) FAILING TO SEQUESTER DEPUTY ATTORNEY GENERAL DONOVAN WHO LATER APPEARED AS A WITNESS; II) FAILING TO GRANT A MISTRIAL WHEN THE DEPUTY ATTORNEY GENERAL TRYING THE CASE COMMITTED DELIBERATE MISCONDUCT WHILE DEPUTY ATTORNEY GENERAL DONOVAN TESTIFIED; III) BY ALLOWING DEPUTY *131 ATTORNEY GENERAL DONOVAN WHO TESTIFIED TO VIOLATE THE RULES OF PROFESSIONAL CONDUCT; AND IV) BY FAILING TO DECLARE A MISTRIAL DUE TO REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT WHICH VIOLATED DEFENDANTS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL.
POINT VI THE STATE VIOLATED THE EX POST FACTO PROVISIONS OF THE UNITED STATES AND NEW JERSEY CONSTITUTIONS BY INDICTING THE DEFENDANTS NAMED IN COUNT ONE WITH CONSPIRING TO COMMIT A SECOND DEGREE CRIME, AND BY INDICTING THEM IN COUNT TWO FOR SECOND DEGREE THEFT.
POINT VII DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS AS THE PROSECUTOR'S SUMMATION EXCEEDED ALL BOUNDS OF PROPRIETY AND CONSTITUTED REVERSIBLE ERROR.
POINT VIII DEFENDANT WAS DENIED RIGHT TO COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND BY ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY STATE CONSTITUTION; A PRESUMPTION OF PREJUDICE IS JUSTIFIED REQUIRING REVERSAL OF DEFENDANTS CONVICTIONS.
POINT IX DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE TRIAL JUDGE REPEATEDLY ADVISING THE DEPUTY ATTORNEY GENERAL HOW TO TRY THE CASE, BY QUESTIONING WITNESSES ON BEHALF OF THE STATE, AND BY COMMITTING OTHER ERRORS WHICH AGGREGATELY, IF NOT INDIVIDUALLY, DENIED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.
POINT X THE TRIAL JUDGE ERRED IN DENYING THE MOTION FOR NEW TRIAL.
POINT XI THE TRIAL JUDGE ERRED IN NOT ENTERING A JUDGMENT OF ACQUITTAL AS TO COUNTS 2, 3 AND 5 AS THE EVIDENCE WAS INSUFFICIENT AND DID NOT ESTABLISH THE CRIMES BEYOND A REASONABLE DOUBT.
POINT XII DEFENDANT'S CONVICTIONS WERE AGAINST THE WEIGHT OF THE EVIDENCE AND HIS GUILT WAS NOT PROVEN BEYOND A REASONABLE DOUBT.
POINT XIII THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE STATEMENTS GIVEN BY DEFENDANT WATLEY TO THE STATE OF NEW JERSEY BUREAU OF SECURITIES, TO THE DEPUTY ATTORNEY GENERAL INVESTIGATING CO-OP, AND TO THE STATE GRAND JURY WHICH RETURNED THE INDICTMENT.
POINT XIV THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE; THE SENTENCING COURT DID NOT PROPERLY WEIGH THE AGGRAVATING AND MITIGATING FACTORS; THE COURT ERRED IN NOT MERGING COUNT 5 WITH COUNT 3.
NOTES
[1] We have consolidated these cases for purposes of opinion.
[2] Some of the counts also referred to N.J.S.A. 2C:2-6.
[3] Others were indicted in the indictment, which is relevant for purposes of some of the testimony admitted in furtherance of the conspiracy. Of the fifteen co-defendants, only appellants and Adolph Donald Ebert, another state police officer, were jointly tried on the matter resulting in the convictions before us. Although convicted, Ebert did not appeal.
[4] The indictments alleged that the charges embodied in counts one and two were "Second Degree."
[5] On the day the trial commenced defendants moved to reinstate their guilty pleas pursuant to the original agreements with the prosecutor. While the judge encouraged the prosecutor to accept the offer or renegotiate with defendants, the motion was denied.
[6] While counsel argued defendants could not be convicted of second degree crimes, Donald addressed the court himself and alleged ineffective assistance of counsel because his attorney had not previously recognized the error. He claimed, in essence, that he could not be reprosecuted pursuant to the appeals. In motions before sentencing, the defendants argued that the original sentences had to be reimposed because the double jeopardy clause precluded the prior appeals.
[7] The pretrial statements of Kelty and DeLuzio were read to the jury. Kelty stated that he was going to donate any return of the investment back to "Co-Op" and stopped providing security once he realized the program was an "illegitimate venture." DeLuzio said he asked for his money back when he realized people were "being cheated out of their money."
[8] We have not been presented with that part of the transcript of June 10, 1988, which includes the return of the verdict. However, it was not suggested in the jury instructions, the briefs or in oral argument before us that there was any special verdict rendered by which we could conclude that the jury found that defendants promoted gambling other than by their efforts in conducting a lottery.
[9] Because of the allegations of the conspiracy and the judge's charge, the conspiracy conviction on which the Sanders were convicted, cannot be resurrected. While they were also convicted on count two of theft by deception, the conspiracy to commit that offense was properly merged therein. See N.J.S.A. 2C:1-8b, d(2).
[10] Counsel was relieved by order entered on May 8, 1985. There were various other proceedings in the trial and appellate courts before the trial commenced in April 1988.
[11] The record reflects defendant's express waiver of his right to be present for jury selection and openings. The docket sheet does not refer to any dispositive order on the issue of waiver of the presence of counsel or the State's claim that defendant elected to appear pro se, at least for certain proceedings. The State asserts that Watley purposely tried to minimize his role in the conspiracy by purposely minimizing his role at trial. We cannot be certain as to exactly when defendant and his counsel were present. Moreover, we may not have the transcripts of all relevant pretrial proceedings. Accordingly, we prefer to remand for a full plenary hearing on this issue.
[12] The offense embodied in count two, theft by deception, was alleged to have occurred between December 8, 1980 and March 17, 1981. The amendments to the grading provisions of N.J.S.A. 2C:20-2b took effect on June 15, 1981. L. 1981, c. 167, § 6.